JOEL REN v. D. M. DRISKELL et al.

1. HOMESTEAD. *Judgment in favor of State.* An execution on a judgment in favor of the State against a defaulting tax-collector, for taxes due the State collected and not paid over as required by law, can not be levied upon the homestead of the defaulting tax-collector.

2. SAME. *Same.* The homestead in such case is exempt from seizure and sale under execution in favor of the State.

3. SAME. *How same must be conveyed.* While, under the act of 1868, the husband may convey the homestead for the benefit of the family, yet he can not divest their interest by any less solemn act.

## FROM COCKE.

Appeal from the Chancery Court at Newport. H. C. SMITH, Ch.

A. S. PROSSER, G. W. PICKLE and W. W. LANG-HORN for complainant.

W. S. McSWEEN and WM. McFARLAND for defendants.

COOKE, Sp. J., delivered the opinion of the court.

In 1872 a judgment was recovered by the State against the complainant and his sureties as tax-collector of Cocke county, for taxes due the State for the year 1869, which he collected, and failed to pay over as required by law. Execution was issued upon this judgment, under which a tract of land was levied upon and sold by the sheriff, and purchased by the

respondents, Palmer and Driskell, who, after the expiration of the time for redemption, took a sheriff's deed to the land, and instituted an action of ejectment against the complainant in the circuit court to recover the possession. Thereupon this bill was filed for the purpose, among other things, of enjoining the action of ejectment, alleging that the complainant was the head of a family, was residing upon said land as his home at the time of said sale, and had so continued ever since; that he was entitled to a homestead in the land; that it had been sold in violation of this right, and seeking to have the same assigned to him, and the respondents perpetually enjoined from prosecuting their ejectment so as to interfere with this homestead.

The answer of the respondents denied the complainant's right to homestead in the land upon several grounds, and alleged that if he were otherwise entitled to it, the complainant was estopped from setting up any homestead right, as against them, for the alleged reason that he had induced or encouraged them to become purchasers of the land without asserting any such right, but had indicated to them that he would not set up any claim to homestead in this particular land. A good deal of proof was taken.

The chancellor dismissed the bill, and the complainant has appealed.

While there were other questions presented by the record, the report of the Referees, and the exceptions thereto, present but two questions for our determination. The first and more serious one is, does the

homestead exemption contained in the act of March 12, 1868, ch. 85, secs. 2 and 3, operate against the State, so as to protect the complainant against a judgment for revenue due the State which he, as tax-collector, failed to collect and pay over as required by law.

This is a question of first impression in this State, and is not free from difficulty. It is a very ancient maxim of the English law that the sovereign is not bound by any statute if he be not expressly named therein, unless there be equivalent words, or unless the prerogative be included by necessary implication: Broom. Leg. Max., 72. *Prima facie* the law is made for the subject and not for the sovereign: *Ib.* Yet this maxim admits of these broad exceptions, that "if a statute is intended to give a remedy against a wrong, the king, though not named, shall be bound by it; and the king is impliedly bound by statutes passed for the public good, the preservation of public rights, and the suppression of public wrongs, the relief and maintenance of the poor, the general advancement of learning, religion and justice, or for the prevention of fraud: Broom. Leg. Max., 73; 1 Bla. Com., 261; 1 Kent's Com., 460. In the United States the same principle has been held applicable to the Federal and State governments: 14 Pet., 315; 12 Bush., 283; 7 Ind., 50. "It would seem," says Mr. Thompson in his Treatise on Homestead, sec. 386, "that an application of this principle to homestead and exemption laws in which the State is not expressly named, would result in the conclusion that

the State is not bound by such laws, especially where
to so hold would contravene rights belonging to the
State peculiarly to its political character, such as the
right to collect revenue.    In many of the States this
question is determined by the express provisions of
statutes, which declare, in various terms, that nothing
shall be exempt from execution where the debt, other
than public taxes, is due the State; or where the
debt is for public taxes legally assessed upon the
homestead or other property; or where the demand
is for a public wrong committed, punished by fine.
See section above referred to and authorities cited.
"But," says the same author, "where the question has
arisen in the silence of statutes, with two exceptions, the
courts have held otherwise.    The Supreme Court of Illi-
nois holds that the statute protects a homestead from sale
under a judgment rendered for a fine and costs in a
prosecution for a misdemeanor.    The same result was
reached in Missouri, but under a statute entirely dis-
similar in terms.    The act in question provided that
the homestead therein defined should be "exempt from
attachment and execution except as hereinafter pro-
vided."    There was nowhere any proviso saving
debts due the State.    The court held, in an ably
reasoned opinion by Wagner, J., that "the statute pro-
tected the homestead from sale under an execution
issued against the surety on a forfeited recognizance,
although the debt in such a case was due to the State."

In the Illinois case referred to in the above ex-
tract, *Loomas* v. *Gerson*, 62 Ill., 13, the learned judge
delivering the opinion of the court, said: "The ob-

ject of these laws was to furnish a shelter for the wife and children which could not be taken away or lost by the act of the husband alone. This principle must equally exempt the homestead from sale under a judgment for a fine and cost, rendered in a criminal prosecution for a misdemeanor.. The wife is not to suffer for the wrongful act of the husband. The State must submit to the same exemptions of a defendant's property that it imposes upon its citizens." See also *State* v. *Pitts*, 51 Mo., 133. In Illinois, a statute provided that the bond of a tax-collector should be a lien upon all his real estate situate within the county at the time of filing of the bond. But it was held that a judgment against a *collector* upon a bond which was thus a lien upon his realty, was not a lien upon his homestead. A judgment against a private person was not, in that State, a lien on the homestead of the judgment debtor, and the State was not in respect of its revenue in any better position than was the citizen in regard to the collection of his debt: Thomp. on Homestead, sec. 387; 45 Ill., 297. It is proper here to observe that the two exceptions to the ruling, as above stated by the learned author, was the case of the *Commonwealth* v. *Cook*, 8 Bush, (Ky.) 220, which was subsequently virtually overruled by the same court in the case of the *Commonwealth* v. *Lay*, 12 Bush., 283; and the case of *Brooks* v. *The State*, 54 Ga., 36, which was the other exception, and turned upon the point that the exemption claimed operated retrospectively, and was disallowed on the authority of the case of *Gunn* v. *Barry*, 15 Wall, 610. It is to be

further observed, that in the case of *Gladney* v. *Deavers*, 11 Ga., 79, it was held by the Supreme Court of that State that the State was bound by acts of the Legislature exempting certain articles of personal property from levy and sale for debts for the benefit of the wife and children of the debtor, so that they could not be seized and sold under execution for the payment of taxes. Hence there would seem to be really no conflict in the decisions of any of the States upon this question, when there has not been a positive statutory provision prescribing a different rule.

In the case of *Gunn* v. *United States*, 9 Wall., 659, Mr. Justice Bradley delivering the opinion of the court, said: "It is urged that the government is not bound by a law unless expressly named. We do not see why this rule of construction should apply to acts of legislation which lay down general rules of procedure in civil actions." In the case of *Fink* v. *O'Niel*, 16 Otto, 272, it was decided by the Supreme Court of the United States that the homestead of a defendant is not subject to seizure and sale by virtue of an execution sued out on a judgment recovered by the United States in a civil action, if, had a private party been the plaintiff, it would have been exempt therefrom by the law of the State where it is situate. In that case the question arose as to whether or not the homestead of the debtor, who was a citizen of Wisconsin, would be exempt under the constitution and laws of that State from a judgment recovered against him by the State. The only constitutional provision was a declaration in the bill of rights " that the priv-

ilege of the debtor to enjoy the necessary comforts of
life shall be recognized by wholesome laws," and it
had been said by the Supreme Court of that State,
"that in all the enactments found upon its statute
books in regard to homestead exemption, the most sed-
ulous care was manifest to secure the homestead to
the debtor, his wife and family, against all debts not
expressly charged against it. Mr. Justice Matthews
delivering the opinion of the court in that case, said:
"We have found no case in which the question has
been raised, or where there has been any expression
of judicial opinion whether the exemption would pre-
vail or not as to judgments in favor of the State;
but we do not doubt, from the language of the con-
stitutional and statutory provisions and the rules of
construction followed in other cases, that it would be
held by its courts, if the question should be directly
made, that the State, except for taxes, which are ex-
pressly excepted, would be bound by the exemption.
And after deciding that in case of executions upon
judgments in civil actions, the United States are sub-
ject to the same exemptions as apply to private per-
sons by the law of the State in which property levied
on is found. The learned judge cites the declaration
of Lord Coke, that it had been held in Lord Berk-
ley's case, Plowd. Com., 233, that the king was bound
by the statute *de donis,* 13 Edw. I., ch. 1, and says:
"By parity of reasoning based on declared public pol-
icy of states, where the people are the sovereign, laws
which are acts of preservation of the home of the
family exclude the supposition of any adverse public

interest, because none can be thought hostile to that, and the case is brought within the humane exception that identifies the public good with the private right, and declares "that general statutes which provide necessary and profitable remedy for the maintenance of religion, the advancement of good learning, and for the relief of the poor, shall be extended generally according to their words; for civilization has no promise that is not nourished in the bosom of the secure and well-ordered household."

By the act of 12th March, 1868, above cited, the homestead of any housekeeper or head of a family is exempt from execution or attachment for the debts of any such head of a family or housekeeper; and this exemption applies whether the estate be legal or equitable. The only exception is that it shall not apply as against unpaid purchase-money, nor to contracts entered into before its passage.

By an unbroken current of decisions of this court, it is declared to be the policy of this State that its exemption laws are to be literally construed so as to advance the remedy the Legislature intended to afford: 4 Heis., 288; 7 Heis., 514; 6 Heis., 137, and numerous cases cited; Meig's Dig., sec. 1477.

The exemption of the homestead is not for the benefit of the debtor alone, but mainly for the helpless members of his household, for whom it was the object of the Legislature to provide shelter and means of support. And although the State is not named in the act, we are of opinion that debts due to it as well as to individuals was intended to be and are

embraced within its provisions; and in accordance with the authorities above cited, we hold that the homestead of the complainant was exempt from seizure and sale under the execution in favor of the State under which it was levied upon and sold.

As to the question of estoppel. The sheriff who levied upon and sold the land, testifies that the complainant directed him to levy upon this tract of land; that he was living on this tract; that he had two tracts of land, but said he would keep one tract to live on. Respondent, Palmer, purchased the land at the sheriff's sale, and Driskell afterwards purchased a half interest from Palmer, who assigned one-half his bid to Driskell, and the sheriff made a deed to them jointly. Driskell testifies that Ren requested him to make this purchase, and stated that if he could get the land sold he could come nigher *getting out* than to sell the other lands. That he has other lands, and said he and his old lady would go back to their old home. The testimony shows that at the time of the sheriff's sale of the land in controversy, the complainant did have one other tract of land, but which he voluntarily conveyed in trust for the benefit of his sureties in this judgment, but in a very short time afterwards, and we think before Palmer transferred a half interest in his bid to Driskell. Nor could the sale of said interest by Palmer to Driskell in any manner aid complainant to get out of his indebtedness, as no part of the purchase-money inured in any way to his benefit. Besides, the testimony shows that at this very time Palmer was in posses-

sion of a part of this land, and complainant in possession of the other, claiming it as a homestead. To make an act *in pais* estop a party, the act must be shown to have been done knowingly and deliberately, not hastily or unadvisedly: 2 Hum., 270; 5 Hum., 290. Besides, as we have seen, the homestead was intended for the benefit of the family, and while under the act of 1868, above cited, the husband could *convey* the homestead, we are of opinion that he could not divest their interests by any less solemn act. But be this as it may, we are of opinion the testimony does not make out a case that would estop the complainant himself without reference to any interest of the wife and children. We are of opinion, therefore, that the complainant is entitled to relief to the extent of having a homestead assigned in the tract of land in controversy, and the action-at-law perpetually enjoined so far as interfering therewith.

The Referees came to a different conclusion upon both these questions, and reported that the homestead was not exempt; that the complainant was estopped from setting it up, and that the decree of the chancellor dismissing the bill should be affirmed with costs.

The exceptions to the report will be sustained, and the decree reversed, and relief granted as herein indicated. The respondents will pay the costs of this court. The costs of the chancery court will be equally divided. The cause will be remanded to have said homestead assigned, in accordance with this opinion.