Brooks *vs.* The State of Georgia.

JOSEPH H. BROOKS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. The setting apart of a homestead to the family of a tax collector out of his property does not protect it from liability to an execution issued by the comptroller general against the collector and his sureties for a default which occurred in 1867.

2. Nor does the possession of the land by the family as a homestead for four years before a levy is made, discharge it from the lien created under the statute by the execution of the bond as tax collector.

Homestead. Tax. Lien. Before Judge JAMES JOHNSON. Muscogee Superior Court. May Term, 1874.

On October 2d, 1873, the comptroller general issued an execution against Isaac T. Brooks, as tax collector of Muscogee county, and his securities, for $874 74, it being the amount of a default made by him in the year 1867. On November 17th, 1873, a levy was made on certain lots of land which were claimed by Joseph H. Brooks. On the trial of this issue the following facts appeared :

On August 9th, 1869, Mary F. Brooks, wife of the defendant in *fi. fa.*, for herself and minor children, applied for a homestead in the aforesaid land, under the act of 1868. The homestead was allowed on the 8th of the following month. At the April term, 1873, of the court of ordinary, leave was granted to sell the homestead. Under this authority, Mary F. Brooks, on April 13th, 1873, conveyed said property to claimant. She and her minor children remained in possession of the lots until August or September of the year of the sale. The claimant then assumed possession, and has since so remained.

The court charged the jury, that the facts aforesaid being undisputed, the property levied on was subject to the execution. To this charge the claimant excepted. The jury found accordingly.

Error is assigned upon the above ground of exception.

THORNTON & GRIMES, for plaintiff in error.

W. A. LITTLE, solicitor general, for the state.

TRIPPE, Judge.

1. The default of the tax collector occurred in 1867. His bond was executed in that year, and his property was bound from the date of its execution, and so was the property of his sureties: Code section 913. The comptroller general issued the execution against the collector and the sureties on his bond. The question is, did the assignment of the homestead to the wife of the collector, in this land, protect it against the execution, the debt due the state? In Gunn *vs*. Barry, 15 Wallace 610, the supreme court of the United States held that the homestead provisions of the constitution and laws of this state did not operate on debts created before their adoption, at least that such a construction of them would render them unconstitutional. It is true, that was a case between citizens, and it may be said that though the state cannot impair the obligation of such contracts, still, its power is not thereby limited as to its right to remit its own claims, debts due itself, or a lien it has on a citizen's property. This proposition may be true, but it would take a very clear case to authorize such a construction of the constitution or a statute, that would declare them void, as to persons, but not so as to the state. The general rule is that the king or the state is not bound by the general words of a statute unless expressly named therein: 1 Kent, 460; 4 Cowen, 143; 1 Bl. Comm., 261. There are exceptions to this, it is true, for the state is bound by the general words of a statute made for the advancement of learning or the support of the poor, and the reason for it is, that statutes in which the public are interested ought to be so construed that they may be effectual: 1 Black. Comm., *supra*. Granting all this, and that if the homestead acts had been operative in cases like this between citizens, that is, as to debts contracted before 1868, it would also have been binding on the state, yet the rule would scarcely be strained so as to make general words include the state when it was held that they could not affect private persons, unless such was clearly the intention of the law-giver. Furthermore, if

it be held that the state was included in those general words, and that the collector's property, by virtue of the homestead, was discharged from the lien of the state, then would the sureties be also discharged, for a release of the property of the principal would operate as a release of the surety. And if this result would not follow in a case where the state was interested, then it would be that the execution could be enforced against the sureties, who could immediately indemnify themselves by means of the same execution out of the very property which the state was debarred from seizing. This right could not be taken from them, and the process would simply be changed to one going around a circle. The state could not have intended this, nor can the provisions of the homestead enactments be fairly construed to mean that the state not only intended to forgive a defaulting public officer for withholding a portion of the public revenue, but also to discharge his sureties. From these considerations, it is apparent that this case is different from that of *Gladney vs. Deavors*, 11 *Georgia*, 79.

2. It was further claimed by plaintiff in error that as the family of the tax collector had been in possession of the land levied on four years after its assignment as a homestead, it was discharged from the lien which the state held upon it. It did not appear that the purchaser had been in possession that long. The wife, who has a homestead assigned out of her husband's property for the benefit of the family, does not, nor does the family, stand in the position of a *bona fide* purchaser for a valuable consideration, as provided in section 3583 of the Code. This case does not come within the provisions of that section, and it was so ruled in *Smith vs. Ezell*, 51 *Georgia*, 570.

Judgment affirmed.