## EVANS *vs.* COLLIER.

1. One count of a declaration alleged, in brief, as follows: When plaintiff was about four years of age, the sister of defendant took him into her possession and control, claiming that he was bound to her in some way. She kept him and caused him to work for her until he was about sixteen years of age, when she delivered him to defendant. Plaintiff worked for defendant on his farm, and while so engaged, defendant directed him to shoot some cattle trespassing on defendant's land, stating that he would stand up to plaintiff and save him harmless from anything that might occur in consequence. Plaintiff shot a cow and was arrested for it. Defendant became the surety on his bond to appear at court to answer for the offence, and promised plaintiff that he would continue to stand as such until the trial of the case, but afterwards defendant became angry with him, and falsely represented to him that he must attend court in Atlanta to be tried for that offence. By reason of such false representation, plaintiff went to Atlanta, where defendant delivered him up to the sheriff of the county, who put him in jail, where he remained three or four days. If he had had notice of this intended arrest, he could have obtained other security; and he claimed damages against the defendant. It was not alleged that the shooting of the cow was no offence, or that the plaintiff did not know that it was a crime, and that he was obliged to obey defendant's orders:

*Held*, that the pleadings must be taken most strongly against the pleader; and so construing them, this count in the declaration was demurrable.

2. A second count in the declaration alleged, in brief, as follows: While plaintiff remained with the sister of defendant, she required him to work very hard, making him carry heavy cans of milk a distance of about four miles, in consequence of which his legs became crooked by turning in at the knees. After she delivered him into the control of defendant, the latter caused him to work on a farm, and his legs became still more crooked. Plaintiff applied to an eminent surgeon, who promised to cure him of the crookedness of his legs, if defendant would pay for the apparatus necessary to straighten them. He applied to the defendant for the apparatus, which cost about $25, but the latter refused, and still continued to require him to work:

*Held* that, in the absence of any allegation that defendant received plaintiff's services without compensation, it did not appear how defendant was bound to furnish surgical aid in having plaintiff's legs straightened, or how he could be held liable for damages for failing to do so; and this count of the declaration was demurrable.

October 22, 1887.

Actions. Pleadings. Damages. Before Judge VAN EPPS. City Court of Atlanta. December Term, 1886.

Reported in the decision.

REUBEN ARNOLD; E. N. BROYLES, for plaintiff in error.

HILLYER & BRO.; HULSEY & BATEMAN, for defendant.

BLANDFORD, Justice.

1. Joseph Evans brought his action against George W. Collier. In the first count, the declaration alleges that when he was some four years of age, he got into the possession and under the control of Mrs. Evans; that she claimed he was bound to her in some way; that she kept him and worked him until he was about sixteen years of age, when she turned him over to George W. Collier, her brother; that he worked for Collier on his farm. He alleges that, while working for Collier, Collier directed him to shoot some cattle trespassing upon Collier's land, Collier stating that he would stand up to him and save him

harmless from anything that might occur in consequence; that he did shoot a cow, and for this was arrested; that Collier came forward and became his surety or bail for his appearance at court to answer for this offence, and promised him that he would continue to stand as such until the trial of the case; but that afterwards Collier became angry with him, and falsely represented to him that he must attend court in Atlanta to be tried for this offence with which he had been charged, and by reason of that false representation on the part of Collier, he came to Atlanta, where Collier turned him over to the sheriff of the county, who put him in jail; that he remained there for three or four days; and that if he had had notice of this arrest by Collier, he could have gotten other security. And he claims that he was thereby endamaged in the sum of ten thousand dollars.

The declaration does not allege that the shooting of the cow was no offence; but, on the contrary, we are left to infer from the declaration that it was a crime to shoot the cow in the way he did. If it had alleged that the shooting of the cow was no crime, or that he did not know that it was a crime, and that he was obliged to obey Collier's orders, possibly that count in the declaration would have been good. But it is a rule in pleading that the pleadings must be taken most strongly against the pleader. Where two inferences may be drawn from the pleadings, one favorable to the pleader and one unfavorable to him, the court will draw that inference which is most unfavorable to the pleader. We think, taking this count in the declaration as it stands, that it contains no cause of action against Collier.

2. The next count in the declaration alleges that, while he was with Mrs. Evans, she worked him very hard, making him carry heavy cans of milk some four miles from where she lived, and that in consequence his legs became crooked by the turning in of his knees; and that after she turned him over to Collier, Collier continued to work him

upon his farm, and that he became still more knock-kneed than he was before; that he applied to an eminent surgeon in the city of Atlanta, who promised to cure him of the crookedness of his legs if Collier would pay for the apparatus necessary to straighten them; that he applied to Collier to pay for the apparatus, which cost some twenty-five dollars, but Collier refused, and still continued to work him.

This count in the declaration does not allege that Collier was receiving his services without compensation. Probably if there had been such an allegation, that count would have been good; but we are left to infer that he did receive compensation from Collier for his services; and if he did, we cannot very well see how Collier was bound to furnish him surgical aid in having his legs straightened; nor, having failed to do so, how he can be liable to him for damages.

But it is insisted that Collier stood *in loco parentis* to him. If Collier had been his parent, there would have been no right of action on the part of the son against the father for not furnishing surgical aid in having the son's legs straightened after the son had become of age. But if Collier took this man when he was a boy, received all his services and paid him nothing, then he would have been under legal obligation to furnish him surgical aid, probably to the extent of having his legs straightened if they could be straightened. But it is not alleged in the declaration that Collier had his services without compensation; so we conclude that the general demurrer to this declaration upon the ground that there was no cause of action set out in either count, was well sustained by the court; and the judgment of the court below is affirmed.