BUTLER *et al.*, supervisors, *v.* MERRITT.

1. "The State is not bound by the passage of a law unless named therein or unless the words of the act should be so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature."

2. The general local option law did not name the State or manifest any intention to include the State within its operations, and therefore that law does not prohibit the State from establishing and maintaining dispensaries for the sale of intoxicating liquors, through public officers, for public profit and for the regulation of the liquor traffic.

3. This court will not pass upon or consider any question as to the constitutionality of an act of the legislature, when it does not appear that such question was made by the record or passed upon by the lower court.

Submitted March 2, — Decided April 26, 1901.

Injunction. Before Judge Spence. Mitchell superior court. February 7, 1901.

*J. H. Scaife* and *S. S. Bennet*, for plaintiff in error.
*E. M. Davis, I. A. Bush & Sons*, and *Guerry & Hall*, contra.

SIMMONS, C. J. In 1898 the General Assembly passed an act (approved December 21, 1898) allowing certain municipalities in the county of Mitchell to establish dispensaries for the sale of intoxicating liquors. The act appointed certain officers of the county as commissioners to carry out its provisions. It was also provided that three supervisors should be selected for each such dispensary. These supervisors were to elect a manager by whom liquors were to be sold for cash and in certain quantities prescribed by the act. The net profits were to be paid, one half to the municipality, and one half to the school commissioner of the county for school purposes. In 1899 the people of Mitchell county, by popular vote, adopted the provisions of the general local option law (enacted in

1885) and the amendments thereto. In the same year the town of Camilla, Mitchell county, by its municipal authorities, adopted the Mitchell county dispensary act and expressed a desire to have the provisions of that act put in force in Camilla, giving notice thereof to the commissioners as provided in the act. Whether this was done before or after the adoption of the general local option act by the county does not appear. Subsequently to all of this, Merritt filed an equitable petition against certain persons, alleging the above facts and that the defendants had been made dispensary supervisors and were preparing to establish and run a dispensary for the sale of intoxicating liquors. The petitioner alleged that he was a tax- payer and citizen of the town and county, and prayed the court to enjoin the establishment of the dispensary. The main ground al- leged in the petition was that the people of the county had adopted by popular vote the general local option law subsequently to the passage of the local act of 1898, and that by the adoption of that law they had virtually repealed the local dispensary act. The su- pervisors answered, denying that the adoption of the general local option law by the county had repealed or modified the dispensary act, and insisting that the defendants were the agents of the State to carry out the law. They further contended that the State was not named or meant to be included in the general local option law, and that this law, therefore, did not prohibit the State from estab- lishing a dispensary and dispensing liquors therein under the rules prescribed by the act. The court granted the injunction, and the supervisors excepted.

1, 2. The main and controlling question to be decided is whether the adoption by the people of the county of the provisions of the general local option law repealed or modified the dispensary act so as to make the sales of liquors under that act illegal. It was con- tended by the plaintiff in the court below that the general local op- tion law forbade any and all sales of intoxicating liquors in any county which properly adopted it, and that the terms of the act apply as well to the State and its agents as to private persons. The supervisors contended, on the other hand, that the State was not bound by the general local option law, as the State was not named therein and the terms of the act did not indicate any inten- tion to bind the State. The rule that the King or State is not bound by an act of parliament or of the legislature unless named

therein has come down to us from the earliest times. It has been universally recognized, so far as we know, by all of the courts of England and of this country, and was recognized early in the history of this court in the case of *Doe* v. *Deavors*, 11 *Ga.* 794. See also *Brooks* v. *State*, 54 *Ga.* 36; *Lingo* v. *Harris*, 73 *Ga.* 28; *Mayor etc. of Brunswick* v. *King*, 91 *Ga.* 522. It is true that the first decision just cited contained a statement that there were three exceptions to the rule, namely: statutes for the maintenance of religion, the advancement of learning, and the support of the poor. According to that case a statute for one of these objects bound the Sovereign or State, although the act did not expressly so provide. The general rule was so well established that it was placed in the last codification of the laws of this State and adopted by the legislature in 1895. See Political Code, § 3, which is as follows: "The State is not bound by the passage of a law, unless named therein, or unless the words of the act should be so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." It seems that the codifiers and the legislature, in adopting this rule, omitted the exceptions above mentioned, and qualified the general rule so as to except cases where there was a manifest intent to include the State. Whether or not the exceptions are still of force in this State, the later decisions of this court and the code section cited at least indicate a disposition not to broaden or increase the exceptions. We are clear that none of these exceptions or any others laid down by text-writers are applicable to the present case. We have carefully examined the general local option law and the amendments thereto, and find nothing therein which would indicate or suggest that the legislature intended by this enactment to bind the State. Construing the act by the well-recognized rule that it is to be presumed, primarily, that the General Assembly intended to legislate with reference to individuals only, there is nothing in this act to raise a suspicion that the legislature intended to bind the State. Its provisions seem to be directed entirely and solely to the acts of individuals. After prescribing the mode and manner of holding the election in each county of the State which complies with the rules laid down, it provides that "If a majority of the votes . . shall be against the sale, it shall not be lawful for any person within the limits of such county to sell or barter for valuable consideration, either di-

rectly or indirectly, or give away to induce trade at any place of business, or furnish at any other public places, any alcoholic, spirituous, malt, or intoxicating liquors," etc. Political Code, § 1548. At the time this law was enacted (in the year 1885) there were no dispensaries in this State. The only persons who were allowed to sell or who did sell intoxicating liquors were natural persons or private corporations, and the law required that they should take out a license. A sale by the State or by a municipality was not at that time known in this State. Therefore the word "persons" could not have been used in the act to mean or include the State or its agents or officers. Officers or agents of the State or of the law are not included in the word "persons," as used in the act. Upon this subject see *Mayor etc. of Brunswick* v. *King*, 91 *Ga.* 522; *Fears* v. *State*, 102 *Ga.* 274. As to the rights of the State, generally, to establish public dispensaries and appoint officers to manage them, and as to whether such a dispensary is a private enterprise, see the opinions of Mr. Justice Lewis in *Plumb* v. *Christie*, 103 *Ga.* 695, and *Dispensary Com'rs* v. *Thornton*, 106 *Ga.* 107. These points are so well and so lucidly discussed in these opinions that I feel it unnecessary to do more than refer to them. Having shown that the general local option law did not name the State or by implication include it, and having shown, by reference to the opinions of Mr. Justice Lewis, that the dispensary is a State institution and managed by an officer of the government, we are forced to the conclusion that the judge erred in granting the injunction.

3. It was argued here in the brief of the defendant in error that the act of 1898, establishing the Mitchell county dispensaries, was unconstitutional for certain reasons stated. We have carefully read the record of the case and the order of the trial judge, and find no intimation that this question was made or argued before him or that he in any way decided or passed upon it. It was certainly not made in the petition for injunction, nor referred to in the order granting the injunction or in the bill of exceptions. Where a constitutional question is not made or passed upon in the lower court, this court will not consider it if afterwards argued here. See *Savannah Ry. Co.* v. *Hardin*, 110 *Ga.* 433.

*Judgment reversed. All the Justices concurring.*