## PALMER *v.* DISTRICT OF COLUMBIA.

---

OFFICERS; MUNICIPALITIES; NUISANCES; STATUTORY CONSTRUCTION; PUBLIC PRINTER; SMOKE LAW.

1. A public official charged with the commission of a public nuisance which the legislative power of the State has endeavored to prohibit cannot protect himself by a claim that in the performance of the act he represents the State.

2. A municipality, even in the performance of its governmental functions,

is not entitled to perpetrate a nuisance (following *Roth* v. *District of Columbia,* 16 App. D. C. 323) ; and the same rule will apply still more strongly to the executive officers of the government, whose duty it is to execute and obey the laws, and not to violate them.

3. All laws are presumed to be consistent with each other until the contrary is shown; and, therefore, it is no excuse to a public official, to secure him immunity for the violation of one law, that he is obeying another. He must obey both.

4. The Public Printer, as the custodian of the Government Printing Office, may lawfully be convicted of a violation of the act of Congress of February 2, 1899 (30 Stat. at L., 812, chap. 79) declaring the emission of dense or thick black or gray smoke from any smokestack or chimney in the District of Columbia, other than the chimneys of private residences, to be a public nuisance, and making "the owner, agent, lessee, or occupant, of any building of any description," from the smokestack or chimney of which any such smoke shall issue, liable to the penalty of the act, and providing "that no discrimination shall be made against any method or device which may be used for the prevention of smoke, and which accomplishes the purpose of this act;" and it is no defense that the accused made estimates to Congress for the use of soft coal in the building under his charge, and that Congress approved them, and made an appropriation of money for the conduct of his office in accordance with them. It is not the use of soft coal that causes the public nuisance, but the use of it in an improper way · and without proper appliances. (Chief Justice Shepard *dissenting.*)

5. Nor, in such a prosecution, would it be a defense that Congress has not furnished the accused with proper appliances wherewith to devest the use of soft coal of its resultant nuisance of smoke, where it does not appear that, during those years the smoke law has been in operation, he made any effort to procure an appropriation from Congress for such appliances. (Chief Justice Shepard *dissenting.*)

6. In such a case, Congress not being in session at the time of the decision, so that the appellant could not make the necessary application to it for relief, the Court suggested, in its opinion, that the municipal authorities would do well to exercise a discretion in the matter of further prosecutions at the time.

No. 1534.   Submitted May 3, 1905.   Decided June 13, 1905.

In ERROR to the Police Court of the District of Columbia.
*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. Alexander R. Mullowny,* Assistant United States Attorney, for the plaintiff in error.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas* and *Mr. F. H. Stevens,* Assistants, for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellant, Frank W. Palmer, was arraigned in the police court of the District, and there was judgment rendered against him there for the violation of what is known as the "smoke law" of the District; that is, the act of Congress of February 2, 1899 (30 Stat. at L. 812, chap.79), entitled "An Act for the Prevention of Smoke in the District of Columbia, and for Other Purposes." The act has been repeatedly before this court for construction, and its validity has been uniformly upheld. This, however, is the first occasion in which a public official, charged with the custody and control of one of the great public buildings of the city, has been held for a violation of the act. The appellant is the Public Printer, and the question now to be determined is whether, as the custodian for the time being of the Government Printing Office, he is amenable to the courts for a violation of the law in permitting the issue of dense black or gray smoke from the chimneys of that office. Under the numerous adjudications cited on his behalf, there is undoubtedly great plausibility in the appellant's contention that the executive offices of the government in this city are not subject to the municipal regulations which all other citizens are required to obey. But we cannot give our assent to the proposition that there is any class of officials above the law, or that there is one law for the official and another for the private citizen with reference to the same duty equally incumbent upon all, and which requires the equal obedience of all, if the statute which commands it is to be at all effectual for the purpose for which it was enacted. We cannot think that it was the intention of Congress to suppress

the nuisance of smoke emanating from a private hotel, and at the same time to authorize it tenfold, perhaps a hundredfold, greater in volume in the great public building across the street. Such discrimination, if it be assumed to exist, would be manifestly unjust, and, by its palpable injustice, would tend to bring the statute into odium and contempt, and would contribute more than aught else to prevent its effective observance.

If there is any one principle of our American institutions which is dear above all others to the hearts of our people, and of which the disregard is above all other things repugnant to our sense of justice, it is that of equality before the law. And this principle of equality is more applicable than anywhere else to the matter of municipal regulations. Municipal regulations intended for the safety of life and limb, and for insuring the public health, if they would be effectual, cannot be permitted to be violated with impunity by anyone, no matter what may be his station or his official position, and even though the offender should seek to shield himself behind the protection of international privilege. The individual citizen, desirous to obey the law and to conform to all its reasonable requirements, will feel himself sorely tempted in a contrary direction, and will not be solicitous to suppress the nuisance of smoke on his own premises or to remove the dangerous accumulation of snow and ice from the sidewalks in front of his residence, if, on the opposite side of the street from him, the agents of the municipality, or the agents of government, are under no obligation on their part to contribute anything to the public safety in that regard.

The act of Congress, for the violation of which the appellant has been charged, is an exercise of the police power of the State, and is intended to suppress a public nuisance injurious to human comfort and human life. The nuisance is equally deleterious and equally a nuisance whether committed by a private person in the management of a factory, store, hotel, or apartment house, or by an officer of the government in the management of a large building, such as the Government Printing Office, temporarily intrusted to his care; and neither in the letter, nor in the spirit, of the law, is there any apparent purpose

to be found to discriminate against the private citizen and in favor of the public official. The terms of the statute are general and comprehensive. In the broadest. and most emphatic language it declares the emission of dense black or gray smoke from any smokestack or chimney in the District, other than the chimneys of exclusively private residences, to be a public nuisance and punishable as such. It did not content itself with forbidding and punishing the act, but it characterized the act as a public nuisance, in order that there should be no doubt about the scope and purpose of the enactment, and in order to eliminate the nuisance of smoke from the District of Columbia. For apparently good reasons, which are obvious to everyone, the movable engines used for the propulsion of railroad trains and steamboats were excluded from the operation of the act. And for still more obvious reasons, of which this court may take judicial cognizance, namely, because in them hard or anthracite coal was almost universally used, which emits little or no smoke, the chimneys of private residences were specially excepted. But, with these exceptions, the prohibition is general, and the buildings used for the business of the government are as much within the spirit, and the letter, and the purpose of the enactment as are department stores, office buildings, and hotels. Indeed, were there discrimination in this regard, a grave question of constitutional right might arise, based upon the ground of palpable inequality, which such legislation would then suggest.

The same general purpose is evidenced in the sweeping enumeration of the persons liable to the penalty of the act, which comprise "the owner, agent, lessee, or occupant of any building of any description." Here, of course, if the scope and purpose of the enactment were such as to exclude the agents of the government from its operation, we would not hesitate to hold, in accordance with the adjudications and with well-established principles of law, that these were not intended to be embraced within the statute, notwithstanding its very general and comprehensive language. But when we find the purpose to be general, and to be best subserved by the inclusion of the agents of the government, and when the language of the statute is amply sufficient in its

generality to include such agents, we fail to see why they should not be regarded as embraced within its terms.

This conclusion is further strengthened by the 5th section of the act, which prescribes "that no discrimination shall be made against any method or device which may be used for the prevention of smoke, and which accomplishes the purpose of this act." This would seem to be rather a direction by Congress to the agents of government than an intimation to private citizens that they are entitled to use any proper device for the prevention of smoke. As an acknowledgment of private right in individual citizens, it would be meaningless; as a direction to officers of government, it was eminently right and proper to insert it in the act; and the fact of the insertion of such a provision tends to show that the Congress intended that the officers of the government in charge of public buildings should be included within the purview of the act.

On behalf of the appellant, reliance is placed upon the well-established rule of law that where the State is not named in an enactment it is not bound by its provisions. Thus, the State ordinarily is not bound by the statute of limitations to which individual citizens are held, and there are numerous other illustrations to be found in the books; but this rule, it seems to us, is not here applicable. The appellant is not the State, nor does he represent the State, in this case. On the contrary, the State, or its representative, the municipality, is the party in interest against him. The State is interested, even as against its own officials, in having its laws enforced, especially those laws which are made for the preservation of the public health. It is not left to the public officials to determine for themselves whether they will obey the laws or not. It is not left to them to create a public nuisance at their pleasure, and then shield themselves behind the pretense that they are the State and cannot be held for that which the legislature expressly prohibited from being done. In France, in the days of Louis XIV., when he said that he was the State, this plea might hold. It might have availed a defendant even in the days of personal government in England, when the infamous maxim was in force that the King could do

no wrong, and his officers were shielded by his privilege. But we cannot see how, in our country, and in this age and generation, a public official, charged with the commission of a public nuisance, which the legislative power of the State has endeavored most rigidly to prohibit, can protect himself by the claim that in the performance of the act he represents the State.

We have held in the case of *Roth* v. *District of Columbia*, 16 App. D. C. 323, that the municipality, even in the course of its performance of its governmental functions, is not entitled to perpetrate a nuisance. And the same rule will apply still more strongly to the executive officers of the government, whose duty it is to execute and obey the laws, not to violate them. All laws are presumed to be consistent with each other until the contrary is shown; and, therefore, it is no excuse to a public official to secure him immunity for the violation of one law that he is obeying another. He must obey both. He must take all laws as qualifying each other, and, if he is the Public Printer, he must do the public printing under such rules and regulations as Congress has prescribed; and especially he must not do it under such conditions as Congress has prohibited.

.Apart from the general principles which we have considered, and which we hold do not excuse him, the plea of the appellant is that he made estimates for the use of soft coal in the building under his charge; that he submitted those estimates to the proper committees of Congress, and that Congress approved them, and made its appropriation of money for the conduct of his office in accordance with them. But we fail to see how, in law or in reason, this affords any justification for a violation of the law against public nuisances. If this were the case of an agent for a private building, submitting to an absent or intangible owner, an estimate for the soft coal to be used in such building, and having the approval of such owner for his estimate, could it reasonably be contended for one moment that such estimate and approval would relieve the agent from liability for the creation of a public nuisance? Repeatedly in this court have we heard in this connection the pleas of parties that they have taken all the precautions in their power, and yet have been unable to prevent the

prohibited emission of smoke from their chimneys; but, in the face of the express prohibitions of the act, and in the face of the fact taught by practical science that the nuisance is preventable, even with the use of soft coal, by the use of proper appliances and proper management, we have never held such pleas to be valid.

Congress has never prohibited the use of soft coal in this District. Such prohibition may be the inevitable result, if obedience is not otherwise rendered to the statute. But thus far it has evidently been the view of Congress that the use of soft coal is not inconsistent with the prevention of the public nuisance created by the emission of dense smoke from chimneys. This being the case, it is not apparent why the appellant should regard his use of soft coal under the authority of Congress as a justification of a public nuisance, which Congress has been careful to prohibit. In other words, it is not the use of soft coal that causes the public nuisance, but the use of it in an improper way or without the proper appliances, and the appellant has not said that he has used this coal in the proper way, or that he is without the proper appliances for the prevention of smoke from it. His true defense is, not that he has used soft coal under the authority of Congress, but that Congress has not furnished to him the proper appliances wherewith to devest such use of its resultant nuisance of smoke. And this defense he has not made. But let us assume that he has made it, and that this is what he means. Is it a good defense? We think not.

The smoke law has now been in force for upwards of six years. So far as the record before us discloses, it does not appear that during that whole period the appellant has at any time made any effort to conform to the requirements of the statute. It will not do for him to say that Congress has not provided him with the proper appliances when he has made no effort to procure such appliances. It cannot be assumed that, in the multitude and magnitude of its public duties, Congress can take the initiative in the determination of the details needed for the conduct of any public office or department of government.

The appellant was appointed to his office with the duty imposed upon him to conduct that office according to law,—accord-

ing to all the laws affecting it,—the smoke law, as well as others; and he is not at liberty to conduct the business of that office in violation of law. The duty was incumbent upon him, as upon all executive officers, to report to Congress the requirements necessary for its management in accordance with the law. It does not appear that he has done so. If it appeared that he had made application for the proper appliances, and that the application had been refused or ignored, perhaps a different question might be presented here. But that question is not presented now, and we cannot assume that Congress will deliberately refuse to executive officers of the government the necessary appliances for giving effect to its own act and its own specific and reiterated requirement.

We are of opinion that the judgment of the police court in this matter was right and just, and that it should be affirmed.

But, inasmuch as the operations of the Government Printing Office might be seriously interfered with by a rigid enforcement of the act at the present time, when Congress is not in session and application cannot immediately be made to it by the appellant to remedy the result of past negligence, the municipal authorities, we think, would do well to exercise discretion in the matter of further prosecutions at this time. *Affirmed.*

Mr. Chief Justice SHEPARD dissenting:

Regretting that I cannot concur in the judgment of my brethren, I think it proper to state the reasons for my dissent.

To the information presented against him the defendant entered a special plea alleging, in substance, that the said building was solely owned, used, and occupied by the United States; that in the discharge of his duties as Public Printer in the execution of the work carried on in said building, it was his duty to report, annually, to the "Joint Committee on Printing" of the two Houses of Congress, submitting estimates of the materials and so forth, including fuel, for the use and consumption of said printing office, together with all contracts and payments therefor; that Congress has regularly appropriated the money

for the purchase of bituminous coal to be used as fuel in the furnaces of said building, all of which purchases have been duly reported as aforesaid; that in the discharge of his duties he has used due care and prudence in the use of said bituminous coal in carrying on the work required by the United States in said building; and that the emission of smoke was occasioned by the use of said fuel notwithstanding his exercise of due care and prudence in the performance of his said duties.

The Attorney General filed a motion on behalf of the United States to set aside and dismiss the information for want of jurisdiction of the court, on the ground, as he informed the court, that the building is the property of the United States, possessed, held, and occupied by them for public purposes, and that the defendant is a public officer of the United States, and not the owner, agent, lessee, or occupant of the same.

The court denied this motion, and sustained a demurrer to the said plea. The defendant electing to stand upon his plea, the court adjudged him guilty, and sentenced him to pay a fine of $50, and, in case of default in payment thereof, to be imprisoned for sixty days.

There is no occasion to consider whether the Public Printer would be liable for the commission of a nuisance through his own wrongful act or neglect of duty, because the allegation of the exercise of due care and prudence in the use of the appliances furnished by the United States has been admitted by the demurrer to the plea. Nor is the effect of this allegation avoided by the further allegation that it was the duty of the Public Printer, among others devolved upon him by Congress, to make estimates of the supplies and fuel needed in the operation of the printing office, for the consideration of the "Joint Committee on Public Printing." For neglect of duty or misconduct, if any, in that respect he can be held responsible by the United States, but not by the District of Columbia in this proceeding.

Whatever effect his recommendations, or want of recommendation, may have had upon said committee, the fact remains that Congress provided by law for the operation of the engines of the Government Printing Office through the use of bituminous coal,

without providing, at the same time, for the necessary appliances to consume the smoke therefrom.

The single question for determination, then, is, whether the act of Congress approved February 2, 1899, applies to the buildings in the District of Columbia belonging to and operated by the United States.

The act reads as follows:

"Section 1. That on and after six months from the passage of this act the emission of dense or thick black or gray smoke or cinders from any smokestack or chimney used in connection with any stationary engine, steam boiler, or furnace of any description within the District of Columbia shall be deemed, and is hereby declared to be, a public nuisance: Provided, that nothing in this act shall be construed as applied to chimneys of buildings used exclusively for private residences.

"Section 2. That the owner, agent, lessee, or occupant of any building of any description, from the smokestack or chimney of which there shall issue, or be emitted, thick or dense black or gray smoke or cinders within the District of Columbia on or after the day above named, shall be deemed and held guilty of creating a public nuisance, and of violating the provisions of this act.

"Section 3. That any person or persons violating the provisions of this act shall, upon conviction thereof before the police court of the District of Columbia, be punished by a fine of not less than $10, nor more than $100 for each and every offense; and each and every day wherein the provisions of this act shall be violated shall constitute a separate offense." [30 Stat. at L. 812, chap. 79.]

The general object of the exercise of legislative power is the enactment of laws for the regulation of the acts and rights of citizens, and not of the sovereign. And the universal rule of construction is that the sovereign state is not bound, or its rights affected, by a statute of apparent general application, unless expressly named therein, or unless the words used are so clear and unmistakable as to leave no doubt that such was the legislative intention. This rule has been uniformly applied in the con-

struction of general statutes of limitations and bankruptcy, and others relating to revenue licenses and impositions, to interest upon debts and demands, to judgment and mechanics' liens, to practice and the like. *United States* v. *Knight,* 14 Pet. 301, 315, 10 L. ed. 465, 472; *United States* v. *Insley,* 130 U. S. 263, 266, 32 L. ed. 968, 969, 9 Sup. Ct. Rep. 485; *United States* v. *Herron,* 20 Wall. 251, 255, 22 L. ed. 275, 276; *Lewis* v. *United States,* 92 U. S. 618, 622, 23 L. ed. 513, 514; *Stanley* v. *Schwalby,* 147 U. S. 508, 515, 37 L. ed. 259, 262, 13 Sup. Ct. Rep. 418; *Page* v. *District of Columbia,* 20 App. D. C. 469, 474, 475; *State* v. *Milburn,* 9 Gill, 105, 117; *Carr* v. *State,* 127 Ind. 204, 220, 11 L. R. A. 370, 22 Am. St. Rep. 624, 26 N. E. 778; *Seton* v. *Hoyt,* 34 Or. 266, 273, 43 L. R. A. 634, 75 Am. St. Rep. 641, 55 Pac. 967; *Josselyn* v. *Stone,* 28 Miss. 753, 763; *Mayrhofer* v. *Board of Education,* 89 Cal. 110, 23 Am. St. Rep. 451, 26 Pac. 646; *Fuller* v. *Roosevelt,* 4 Cow. 144; *State* v. *Garland,* 29 N. C. (7 Ired. L.) 48; *Cole* v. *White County,* 32 Ark. 45, 51; *Stoughton* v. *State,* 5 Wis. 291, 297; *Butler* v. *Merritt,* 113 Ga. 238, 38 S. E. 751; *Brunswick* v. *King,* 91 Ga. 522, 524, 17 S. E. 940; *People* v. *Gilbert,* 18 Johns. 227.

Authorities need not be multiplied in support of a general principle that has met with no judicial denial so far as my research has extended. In the main those have been selected which would seem to bear most directly upon the application of the general principle to the conditions presented by the case at bar; and some of these will be briefly reviewed.

In *Page* v. *District of Columbia, supra,* it was held that an act providing in broad terms that no person shall sell liquor in the District of Columbia without a license, etc., did not apply to persons conducting restaurants in the Capitol under arrangements made with committees of the House and Senate respectively.

In *State* v. *Milburn, supra,* it was held that a general statute declaring that no bond should be received in evidence that had not been stamped, as provided by a revenue law relating to bonds of every nature whatsoever, did not apply to an unstamped bond sued on by the State of Maryland.

In *Josselyn* v. *Stone, supra,* a general statute required the registration of all judgments in order to give liens, and another was subsequently passed providing that all such liens shall be enforced within a certain period or else lost.   Held, that the latter statute, which did not name the State, though sweeping in its terms, did not apply to the lien of a judgment in favor of the State.

In *Mayrhofer* v. *Board of Education, supra,* it was held that a general statute providing for a mechanic's lien upon "any property," and "any building," did not extend to a school building in a district acting by authority of the State.

In *Fuller* v. *Roosevelt, supra,* it was held that a general statute abolishing imprisonment for debt did not bind the State, because it was not named.

In *Seton* v. *Hoyt, supra,* a general statute providing for the running of interest on all debts and demands was held not to apply to the debt of a county, because it was a subdivision of the State, and the latter was not named in the act.

In *Cole* v. *White County, supra,* a general fee bill authorizing certain costs for the service of all writs by officers was held inapplicable to writs served in proceedings on behalf of the State.   To the same effect, *People* v. *Gilbert, supra.*

In *State* v. *Garland, supra,* it was declared that the State was not bound by a general statute regulating jurisdiction in cases of appeal.

In *Butler* v. *Merritt, supra,* the following facts appear:  The State, by authority of law, maintained a dispensary in a town for the sale of liquor.   Subsequently, the town, by a popular vote taken in accordance with the provisions of a general local-option law, put the latter in force.   This was a sweeping act prohibiting the sale of liquor by all persons.   The court held that sales by the State were not within the prohibition, and that the word "persons" did not include the agents of the State.

In *Stoughton* v. *State, supra,* the defendant was indicted for a nuisance directly resulting from a dam maintained under grant of power by the State.   The conviction was reversed on the ground that the State could not punish as a crime an act

which it had expressly authorized. No question of injury done to private individuals by reason of the nuisance was involved. To the same effect, *People* v. *New York Gaslight Co.* 64 Barb. 69.

Tested by the principle stated, in the light of its application in the analogous cases before cited, I am of the opinion that the act of Congress does not apply to the public buildings of the United States in the District of Columbia. Had the regulation been enacted by the municipal authorities under broad general police powers conferred upon them by Congress from time to time, it would not be contended that they, without express authorization, could bring the buildings of the United States under their jurisdiction. From the beginning, a distinction has been carefully made, in respect of management, control, and police, between the public property occupied and used by the United States for governmental purposes, as well as much that is not so used; and that of ordinary public use which falls naturally within the scope of municipal control and supervision.

As regards the regulation of the uses of public property of the latter kind, as well as that of private owners, Congress, which is invested with plenary powers of legislation within the limits of the District of Columbia, has rarely, if ever, conferred upon the municipal authorities other than the minor powers of regulation that are common to municipal corporations in this country generally. Congress reserves to itself the granting of franchises in the public streets, their extension and improvement, as well as the regulation of some of their ordinary uses by the public. By direct legislation it has established some market places and provided for their general regulation; created hack and cab stands in certain public places; and has undertaken to provide for the removal of snow and ice from the sidewalks. See *Coughlin* v. *District of Columbia,* 25 App. D. C. 251. Other instances might be cited. The act under consideration is a municipal regulation of the same nature. Clearly its primary object was to direct the uses of property ordinarily subject to municipal police regulation. The United States are not named in the act, and I do not find in the use of general words, common in all

such local legislation, an unmistakable or certain intent to include their public buildings within its operation. The words "agent" and "occupant," in addition to "owner" and "lessee," are aptly used to meet the case of corporate ownership, and of private ownership where the owner retains no constant personal direction and management. The word "persons," used in the 3d section, necessarily refers, and is limited in its meaning, to the "owner, agent, lessee, or occupant" named in the 2d section.

Neither "agent" or "occupant" aptly describes the relation of the Public Printer to the owners of the building in this case. The occupation as well as the ownership of the building is unquestionably that of the United States; and the Public Printer, who superintends the business which they carry on, with the means and appliances furnished by the legislative department, is not their agent within the ordinary meaning of that word. He holds a public office created for the purposes of the government, and to that end certain powers have been delegated to him. And a public officer is quite different from an ordinary agent. *United States* v. *Maurice,* 2 Brock. 96, 102, Fed. Cas. No. 14,747; *Atty. Gen.* v. *Drohan,* 169 Mass. 534, 535, 61 Am. St. Rep. 301, 48 N. E. 279; *Atty. Gen. ex rel. Rich* v. *Jochim,* 99 Mich. 358, 367, 23 L. R. A. 699, 41 Am. St. Rep. 606, 58 N. W. 611.

In the absence of some express declaration to the contrary, I regard it as most unreasonable to presume that Congress contemplated his prosecution and punishment, equally with the agents of private owners, when, in the exercise of ordinary care, he was engaged in the performance of public duties imposed upon him by law with the only means and appliances provided for the purpose. It requires more than inference to convict the Congress of the gross injustice and oppression of enacting a law embracing in its term the administration of a department of the government, and then subjecting the officer charged with that administration to punishment for the careful discharge of duties imposed upon him by express provisions of the law.

The apparent injustice of making a distinction between public and private ownership of buildings in respect of the emis-

sion of noisome smoke and cinders is a matter with which the courts have nothing to do. This injustice, however, consists, not so much in the exemption of the buildings of the United States from the operation of a municipal regulation, as in the failure to provide the necessary fuel or appliances through which the emission of objectionable smoke might reasonably be prevented. In my opinion the judgment of the police court ought to be reversed with direction to sustain the plea and motion.