1130.  FOWLER v. ROME DISPENSARY et al.

1. An action for damages, brought against the Rome dispensary jointly with the dispensary commissioners and manager, based upon the illegal sale of whisky to a minor son of the plaintiff, can not be maintained.

2. Section 3871 of the Civil Code, which declares that "a father, or if the father be dead, a mother, shall have a right of action against any person who sells or furnishes spirituous liquors to his or her son under age, for his own use, and without his or her permission," confers a civil right entirely distinct from the penalty imposed by section 444 of the Penal Code.

3. The right of action conferred by the terms of section 3871 of the Civil Code does not extend to government officers acting officially.  To charge one with civil liability for damage due to the sale of intoxicating liquor to a minor, it must appear that the sale 'was made by the defendant in person, or in his presence and with his consent, either expressed or implied.

4. The officers of a dispensary created by law are officers of the government, and are not suable as such, except by express provision of law.

5. Where pleadings are ambiguous, they will be most strongly construed against the pleader, especially where the ambiguity is pointed out by special demurrer and no effort to amend is made.

Action for damages, from city court of Floyd county—Judge Hamilton.  April 13, 1908.

Submitted June 12,—Decided October 26, 1908.

M. B. Eubanks, W. B. Mebane, W. M. Henry, for plaintiff.

John W. & G. E. Maddox, for defendants.

RUSSELL, J.  Fowler brought suit for $5,000, damages, against the Rome Dispensary, J. G. Pollock, D. E. Lowry, Frank Freeman, and Charles Shiflett, for selling a pint of whisky, without his permission, to his son, who is a minor.  Pollock, Lowry, and Freeman were alleged to be the dispensary commissioners, and Shiflett the manager of the dispensary.  The 6th paragraph of the petition alleges, that the Rome dispensary, by its commissioners and manager, and their servants and agents, whose names are unknown, acting under the charge of said commissioners and manager, and for them and for said Rome Dispensary, and acting within the scope of their employment, did sell and furnish petitioner's minor son, for his own use and without the permission of petitioner, one pint of corn whisky.  The petition then proceeds to allege, that the son drank part of the liquor and thereafter boarded a railroad train and became beastly drunk, and ran every person out of the

coach, including the conductor and the flagman, and used loud and profane and violent oaths in the presence of ladies; that he was arrested and carried in a drunken condition to the calaboose and locked up, and later fined in the recorder's court for disorderly conduct, which fine was paid by the petitioner; that in addition to fining him for disorderly conduct, the recorder bound him over to the superior court for using obscene, profane, and vulgar language in the presence of females, and for the offense of being drunk on the public highway, and, in accordance with the recorder's decision, he was confined in a cell in Floyd county jail, whence he was later released on bond, after great trouble and expense on the part of petitioner, and taken before the city court of Floyd county and sentenced to pay a fine of $25, or, in default thereof, to serve six months in the chain-gang. The petitioner asked for special damages, for the fine paid by him, for attorney's fees necessarily incidental to the defense of his son, for his railroad fare and expenses in making trips from his home in Forsyth county to Rome, and loss of time, and for $50 for the services of his son while confined in jail. The acts of the dispensary commissioners, the manager, and the agents and employees of the dispensary, in furnishing the said liquor to the petitioner's son, are alleged to have been careless, reckless, and intentional, and punitive damages are also prayed.

To this petition the defendants demurred generally; and they demurred specially to the 6th paragraph, upon the ground, that the name of the person who actually made the sale is not set out, and that it is not stated what connection any of the defendants had with the sale. They also demurred specially upon the ground that the sale of the liquor to the petitioner's son was not the proximate cause of his conduct and of the results thereof. The court sustained the demurrer. So far as the record discloses, no amendment was offered by the plaintiff, setting forth the name of the person who actually made the sale to his son.

We think the court properly sustained the demurrer and dismissed the petition. Without determining whether, under the terms of the act creating the Rome dispensary (Acts of 1901, p. 620), it was the intention of the legislature to create such a corporation as could sue and be sued, and, therefore, whether the demurrer was properly sustainable as to it, under the rulings in

*Town of East Rome* v. *City of Rome,* 129 *Ga.* 290 (58 S. E. 854),.
*Augusta Southern Ry. Co.* v. *Tennille,* 119 *Ga.* 804 (47 S. E. 179),
and *Town of Dexter* v. *Gay,* 115 *Ga.* 765 (42 S. E. 94), it is suffi-
cient to say that, under prior adjudications of the Supreme Court,.
we are constrained to hold that the dispensary is a State agency,
and not subject to suit.  Our holding in the case of *Southern Ex-*
*press Co.* v. *State,* 1 *Ga. App.* 700 (58 S. E. 67), that corporations
are subject to the penalties of the criminal law, which is cited
by counsel for plaintiff in error, has no application to civil suits,
or to a public corporation.   Section 3871 of the Civil Code, under
which this suit is brought, provides, that "A father, or if the father
be dead, a mother, shall have a right of action against *any* person
who sells or furnishes spirituous liquors to his or her son under
age, for his own use, and without his or her permission." Section
444 of the Penal Code deals with the sale of liquors to minors,
both sons and daughters, and declares that "If any person, by him-
self or another, shall sell or cause to be sold, or furnished, or per-
mit any other person, in his employ, to sell or furnish any minor
spirituous or intoxicating or malt liquors, without first obtaining
written authority from the parent or guardian of such minor, he
shall be guilty of a misdemeanor." Even the ordinary liquor dealer
might be liable criminally for a sale by his ·agent or his employee
to a minor when he would not be civilly liable for damages.   For
this reason the special demurrer of the defendant was timely and
appropriate, and properly required the plaintiff to amend his peti-
tion and state what individual actually sold the whisky to his minor
son.   And as no such amendment was offered, the court was fully
authorized to construe the petition most strongly against the pleader
and to dismiss it.   Upon this subject of construction, see *Athens*
*Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4 S. E. 885) ; *Evans* v. *Collier,*
79 *Ga.* 315 (4 S. E. 264) ; *Charleston R. Co.* v. *Stockyard Co.,* 115
*Ga.* 70 (41 S. E. 598)·; *A. & W. P. R. Co.* v. *Georgia Ry. & El. Co.,*
125 *Ga.* 798 (54 S. E. 753).   In the case at bar attention was dis-
tinctly called, by special demurrer, to the fact that the petition did
not charge specifically who made the sale, or what was the position,.
in the dispensary, of the person making the sale.   The plaintiff
could very easily have cleared this point if he had desired to do so,
and the court was authorized to construe his failure to do so as an

admission that the sale was not made either by the commissioners
or by the manager.

In no event was the Rome dispensary suable. The Supreme
Court held, in construing the particular act which created this dis-
pensary (*Barker* v. *State*, 118 *Ga.* 39, (44 S. E. 876)), that "The
dispensary is a State institution. No private individual has any
direct interest in its operation. The dispensary was established
in furtherance of temperance, and in certain localities it has been
thought better to sell intoxicating liquors under direct governmen-
tal supervision than to undertake to prevent the sale altogether or
to allow it by private individuals. . . Dispensaries are govern-
mental agencies designed to curtail the consumption of intoxicating
liquors. This was the nature and purpose of the local act for
Floyd county." It had previously decided the same thing in *Plumb*
v. *Christie*, 103 *Ga.* 686· (30 S. E. 759, 42 L. R. A. 733), *Dispen-
sary Commissioners* v. *Thornton*, 106 *Ga.* 106 (31 S. E. 733), and
*Butler* v. *Merritt*, 113 *Ga.* 238 (38 S. E. 751). In *Plumb* v. *Christie*,
supra, Justice Lewis, delivering the opinion of the court, says (p.
695): "There is no private corporation created by the act, and
no irrevocable grant of a privilege to any one. On the contrary,
the act prohibits any one from engaging on their individual ac-
count in this business; the government itself takes charge of it and
undertakes to control the traffic through the instrumentality of its
public officials." In the *Thornton* case, supra, the same judge, in
a headnote, declared it to be the opinion of the court that "the
dispensary commissioners    . are governmental officials." In
the body of the opinion the court says: "It follows from the de-
cision in the case of *Plumb* v. *Christie*, 103 *Ga.* 686, that the dis-
pensary commissioners of Terrell county, under the dispensary act
for that county, approved December 10, 1897, . . are mere gov-
ernmental agents or officials, not only empowered but required by
the legislature of the State. to establish, under certain rules and
conditions, dispensaries for the sale of liquors in that county; that
this body is not a private corporation, and that these dispensaries
are in no sense private institutions, but they are public institutions
of the government." In *Butler* v. *Merritt*, supra, the qualified vot-
ers of Mitchell county had adopted the local-option act, which pro-
vided that it should not be legal for "any person" within the lim-
its of the county to sell intoxicating liquors; but, notwithstanding

this, a local dispensary act was about to be put in force in the town of Camilla, in that county. The judge of the superior court granted a temporary restraining order, at the instance of Merritt, but the Supreme Court reversed that decision, and held that the dispensary was not included in the words "any person," in the local-option act. In delivering the opinion in that case, Chief Justice Simmons said: "The main and controlling question to be decided is whether the adoption by the people of the county of the provisions of the general local option law repealed or modified the dispensary act so as to make the sales of liquors under that act illegal. It was contended by the plaintiff in the court below that the general local option law forbade any and all sales of intoxicating liquors in any county which properly adopted it, and that the terms of the act apply as well to the State and its agents as to private persons. The supervisors contended, on the other hand, that the State was not bound by the general local option law, as the State was not named therein and the terms of the act did not indicate any intention to bind the State. The rule that the King or State is not bound by an act of parliament or of the legislature unless named therein has come down to us from the earliest times. It has been universally recognized, so far as we know, by all of the courts of England and of this country, and was recognized early in the history of this court in the case of *Doe* v. *Deavors, 11 Ga.* 794. See also *Brooks* v. *State, 54 Ga.* 36; *Lingo* v. *Harris, 73 Ga.* 28; *Mayor etc. of Brunswick* v. *King, 91 Ga.* 522 (17 S. E. 940). It is true that the first decision just cited contained a statement that there were three exceptions to the rule, namely: statutes for the maintenance of religion, the advancement of learning, and the support of the poor. According to that case, a statute for one of these objects bound the Sovereign or State, although the act did not expressly so provide. The general rule was so well established that it was placed in the last codification of the laws of this State and adopted by the legislature in 1895. See Political Code, §3, which is as follows: 'The State is not bound by the passage of a law, unless named therein, or unless the words of the act should be so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature.' It seems that the codifiers and the legislature, in adopting this rule, omitted the exceptions above mentioned, and qualified the general rule so as to except cases where

there was a manifest intent to include the State. Whether or not the exceptions are still of force in this State, the later decisions of this court and the code section cited at least indicate a disposition not to broaden or increase the exceptions. We are clear that none of these exceptions or any others laid down by text-writers are applicable to the present case. We have carefully examined the general local option law and the amendments thereto, and find nothing therein which would indicate or suggest that the legislature intended by this enactment to bind the State. Construing the act by the well-recognized rule that it is to be presumed, primarily, that the General Assembly intended to legislate with reference to individuals only, there is nothing in this act to raise a suspicion that the legislature intended to bind the State. Its provisions seem to be directed entirely and solely to the acts of individuals. After prescribing the mode and manner of holding the election in each county of the State which complies with the rules laid down, it provides that 'If a majority of the votes . . shall be against the sale, it shall not be lawful for any person within the limits of such county to sell or barter for valuable consideration, either directly or indirectly, or give away to induce trade at any place of business, or furnish at any other public places, any alcoholic, spirituous, malt, or intoxicating liquors,' etc. Political Code, §1548. At the time that this law was enacted (in the year 1885) there were no dispensaries in this State. The only persons who were allowed to sell or who did sell intoxicating liquors were natural persons or private corporations, and the law required that they should take out a license. A sale by the State or by a municipality was not at that time known in this State. Therefore the word 'persons' could not have been used in the act to mean or include the State or its agents or officers. Officers or agents of the State or of the law are not included in the word 'persons,' as used in the act. Upon this subject see *Mayor etc. of Brunswick* v. *King,* supra; *Fears* v. *State,* 102 *Ga.* 274 (29 S. E. 463). As to the rights of the State, generally, to establish public dispensaries and appoint officers to manage them, and as to whether such a dispensary is a private enterprise, see the opinions of Mr. Justice Lewis in *Plumb* v. *Christie,* and *Dispensary Com'rs* v. *Thornton,* supra. These points are so well and so lucidly discussed in these opinions that I feel it unnecessary to do more than refer to them: Having shown

that the general local option law did not name the State or by implication include it, and having shown, by reference to the opinions of Mr. Justice Lewis, that the dispensary is a State institution and managed by an officer of the government, we are forced to the conclusion that the judge erred in granting the injunction."

The words "any person," in the local-option act, are the same words employed in § 3871 of the Civil Code, and seem to us to be used in the same sense. We conclude, therefore, that there is no civil liability upon the part of the Rome dispensary, or upon the officers designated by the act creating it, in their official capacity, nor any liability upon these officials for the illegal acts of their subordinates, unless done with their knowledge, permission, and consent. Neither the State nor any of its subordinates or agencies is bound by the passage of a law, unless named therein, or unless the words of the act are so plain and unmistakable as to remove any doubt as to the intention of the legislature. Russell *v.* Men of Devon, 2 Term R. 666; *Scales* v. *Ordinary*, 41 *Ga.* 225. Where there is doubt it will be resolved in favor of the public. *Lingo* v. *Harris*, 73 *Ga.* 30; U. S. *v.* Herron, 20 Wall. (87 U. S.) 251 (22 L. ed. 275) ; Lewis *v.* U. S., 92 U. S., 618 (23 L. ed. 513). Furthermore, the act now in question, in its sixth section, specifically prohibits the sale of liquor to minors by its manager or by any one else, and such a sale, for that reason, would be an act ultra vires, for which the dispensary could not be held liable, even if it could be sued. The commissioners and the manager, of course, would each be liable for any sale made by himself to a minor; but as commissioners or as manager none of them would be liable, under the rulings in *Plumb* v. *Christie,* and *Thornton* v. *Dispensary,* for a sale made by an employee. Any commissioner, or the manager, might be criminally liable for any sale to a minor, of which he had knowledge and which he permitted, but, under the terms of the act creating the officers of the Rome dispensary, the subordinate officers or employees are the employees of the dispensary as an institution, and not of the commissioners or of the manager.

For these reasons we are clear that the court properly sustained the demurrer and dismissed the petition.          *Judgment affirmed.*