STATE, Appellant, *v.* ANDRE, Respondent.

(No. 7,479.)

(Submitted January 13, 1936. Decided January 31, 1936.)

[54 Pac. (2d) 566.]

Mr. *Raymond T. Nagle,* Attorney General, and Mr. *Oscar A. Provost,* Assistant Attorney General, for the State, submitted an original and a reply brief; Mr. *Provost* argued the cause orally.

Mr. *George D. Toole, Messrs. Toomey & McFarland* and Mr. *John W. Chapman,* for Respondent, submitted a brief; Mr. *Toole* and Mr. *E. G. Toomey* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

An information was filed in the district court of Granite county charging the defendant Peter Andre with unlawfully keeping, giving and consuming intoxicating liquors in a place not his residence. It contains a specific description of numerous and various kinds of intoxicating liquors; it is definite both as to the amount and name of each particular kind. To this information a demurrer was filed, alleging that it did not state facts sufficient to constitute a public offense. After hearing, the demurrer was by the court sustained, and a judgment was

entered dismissing the information. The appeal is from this judgment.

The cause was argued by the same counsel, and at the same time, as the case of *State* v. *Driscoll*, ante, p. 348, 54 Pac. (2d) 571. The same questions there urged as to the unconstitutionality of Chapter 105 of the Laws of 1933 were renewed on the argument of this cause, and for the reasons recorded in that decision they are held to be without merit.

In addition, counsel in this case urged that the above chapter is violative of the various constitutional provisions not there argued and considered in the opinion. It is first contended that the Act in question is violative of section 1 of Article IV of the Constitution, in that legislative and judicial powers are delegated to the liquor control board. It is particularly urged that subdivision (k) of section 8 and certain of the provisions of section 9 are vulnerable to those attacks. The latter section confers on the board authority to make rules not inconsistent with the Act relating to the administration of it.

It is not contended that the defendant was prosecuted for the violation of any rules or regulations promulgated under the provisions of the Act. So far as we are advised, the liquor control board has promulgated no rules or regulations under the powers conferred on it by statute. If any such have been promulgated we are not at liberty to take judicial notice of ██ such rules. We will not take judicial notice of the existence of the rules of the various district courts (*Pincus* v. *Davis*, 95 Mont. 375, 26 Pac. (2d) 986), and we have applied the same rule with reference to the taking of judicial notice of the rules of procedure, if any, of the Industrial Accident Board, which is an administrative body. (*Williams* v. *Anaconda Copper Min. Co.*, 96 Mont. 204, 29 Pac. (2d) 649.)

Counsel for the state argue that the defendant cannot raise this constitutional question, as it does not appear that his interests have been, or are about to be, prejudicially affected by the operation of the statute conferring power on the liquor control board to promulgate rules. Counsel for the defendant reply that it is a familiar rule in this jurisdiction that the con-

stitutionality of the law may be tested, not by what has been done, but by what may be done thereunder. (*State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204.) These two rules are discussed and the cases supporting them are collected in the case of *State ex rel. Brooks* v. *Cook*, 84 Mont. 478, 276 Pac. 958, 963. It was there said, with reference to the rule sought to be invoked herein by the defendant, that it "is applicable to all of those cases wherein by strict compliance with the statute the party raising the question of the validity of the statute could have been deprived of due process of law." We approved this statement in *Rider* v. *Cooney*, 94 Mont. 295, 23 Pac. (2d) 261. The defendant in this case, as we observed, is not charged with the violation of a rule or regulation of the liquor control board, but with a violation of the Act of the legislature; hence he is in no position, under the authorities cited, supra, to raise the constitutional question. However, in passing, we discussed at considerable length the question of the delegation of power by the legislature, in the case of *State ex rel. Normile* v. *Cooney*, 100 Mont. 391, 47 Pac. (2d) 637, 643, and we reiterate what was there said, wherein it was declared: "This court in discussing the purpose of section 1 of Article IV, in the case of *O'Neill* v. *Yellowstone Irrigation District*, 44 Mont. 492, 121 Pac. 283, 286, said: 'As was pointed out in *State ex rel. Schneider* v. *Cunningham*, 39 Mont. 165, 101 Pac. 962: "The purpose of the provision is to constitute each department an exclusive trustee of the power vested in it, accountable to the people alone for its faithful exercise, so that each may act as a check upon the other, and thus may be prevented the tyranny and oppression which would be the result of a lodgment of all power in the hands of one body." Each department must therefore refrain from asserting a power that does not belong to it, for the assertion of such power is equally a violation of the trust. (Id.) And it is apparent that one department cannot lawfully delegate any of its powers to another or to any person or body. (*State* v. *Holland*, 37 Mont. 393, 96 Pac. 719; *In re Weston*, 28 Mont. 207, 72 Pac. 512; 6 Am. &

Eng. Ency. Law, 2d ed., 1022; Cooley's Const. Limitations, 163; *Case of Borough of West Philadelphia,* 5 Watts & S. (Pa.) 281.'

"In further explanation of the limitations imposed by our Constitution upon the delegation of power by one department to another, in the case of *State* v. *Johnson,* 75 Mont. 240, 243 Pac. 1073, 1077, it was written: 'That section 1, Article IV, does not wholly prevent the exercise of functions of a nature belonging to one department by those administering the affairs of another is recognized in *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392, wherein Mr. Justice Sanner, speaking for this court, said: ''The separation of the government into three great departments does not mean that there shall be 'no common link of connection, or dependence, the one upon the other in the slightest degree' (1 Story's Commentaries on the Constitution, sec. 525); it means that the powers properly belonging to one department shall not be exercised by either of the others. (Constitution, Art. IV, sec. 1.) There is no such thing as absolute independence.'' He then cites numerous instances of the exercise of powers by one department which, from their nature, would seem to belong to another, but which are incidents to the proper discharge of the powers vesting in the department exercising them, or are reposed in the particular department as a matter of convenience in governmental affairs. ''While the power to make laws may not be delegated to a board or commission, * * * a certain policy or rule having been prescribed by statute, matters of detail in carrying out the executive duty of giving effect to the legislative will may be left to boards or commissioners.'' '

"And finally, in the case of *Chicago etc. Ry. Co.* v. *Board* of *Railroad Commissioners,* 76 Mont. 305, 247 Pac. 162, 164, after an exhaustive review of the authorities, this court said: 'We think the correct rule as deduced from the better authorities is that if an Act but authorizes the administrative officer or board to carry out the definitely expressed will of the Legislature, although procedural directions and the things to be done are specified only in general terms, it is not vulnerable to the criti-

cism that it carries a delegation of legislative power.' The rule thus announced was subsequently approved in the cases of *Northern Pacific Ry. Co.* v. *Bennett,* 83 Mont. 483, 272 Pac. 987, *Barbour* v. *State Board of Education,* 92 Mont. 321, 13 Pac. (2d) 225, and *State ex rel. City of Missoula* v. *Holmes,* 100 Mont. 256, 47 Pac. (2d) 624.''

In view of the fact that the defendant is not in a position to question the constitutionality of this Act on the ground of delegation of power, we refrain from expressing an opinion as to whether or not any of the particular subdivisions of sections 8 and 9 of the Act violate the Constitution in the respects urged.

It is next contended that the sale of liquor by the state in its system of stores is not an exercise of police power, and therefore not a governmental function. Apparently it is conceded that if the system of state stores in dispensing liquor within the provisions of Chapter 105, supra, is the exercise of the police power, then the contention is without merit.

In the case of *In re O'Brien,* 29 Mont. 530, 75 Pac. 196, 200, 1 Ann. Cas. 373, this court said: ''The right to manufacture and traffic in intoxicating liquors is one which is exercised subject to the regulation and control of the police power of the state; a power of which the legislature cannot divest itself (*Burnside* v. *Lincoln County Court,* 86 Ky. 423, 6 S. W. 276; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, 24 L. Ed. 989) ; and such body is the exclusive judge of the manner in which such police power shall be exercised, and its action should be liberally construed. (*Garrett* v. *Mayor,* 47 La. Ann. 618, 17 So. 238.) ''

The right of the state in the exercise of its police power to either prohibit entirely the sale of intoxicating liquors or regulate the sale thereof is thoroughly established. The manner and extent of the regulation, if there be regulation, rests in the legislative judgment of the state and is a matter of legislative policy. (*Crowley* v. *Christensen,* 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; *Ajax* v. *Gregory,* 177 Wash. 465, 32 Pac. (2d) 560.) It is generally held that where the state prohibits the sale of intoxicating liquors by private individuals or corporations, and itself

engages in the distribution thereof, the regulation of the sale thereof is admittedly within the police power. (15 R. C. L. 267; note in 14 A. L. R. 1152; *State* v. *Aiken,* 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345; *Ajax* v. *Gregory,* supra.)

The defendant contends that a contrary rule has been announced and adhered to by two decisions of the Supreme Court of the United States. In the case of *South Carolina* v. *United States,* 199 U. S. 437, 26 Sup. Ct. 110, 114, 50 L. Ed. 261, 4 Ann. Cas. 737, the state had established a dispensary system, and the question arose as to whether the state dispensaries were subject to federal taxation in the form of certain licenses which were by federal statutes imposed upon all persons retailing intoxicating liquors. It was argued on behalf of the state that the state liquor stores or dispensaries, being owned and operated by the state, were instrumentalities of the state government, and therefore exempt from federal taxation. The court, after recognizing the power of the state, so far as the federal Constitution was concerned, to embark in the business of dispensing liquor, made the following observations:

"Suppose a state assumes, under its police power, the control of all those matters subject to the internal revenue tax, and also engages in the business of importing all foreign goods. The same argument which would exempt the sale by a state of liquor, tobacco, etc., from a license tax, would exempt the importation of merchandise by a state from import duty. While the state might not prohibit importations, as it can the sale of liquor, by private individuals, yet, paying no import duty, it could undersell all individuals, and so monopolize the importation and sale of foreign goods.

"Obviously, if the power of the state is carried to the extent suggested, and with it is relief from all Federal taxation, the national government would be largely crippled in its revenues. Indeed, if all the states should concur in exercising their powers to the full extent, it would be almost impossible for the nation to collect any revenues. In other words, in this indirect way it would be within the competency of the states to practically

destroy the efficiency of the national government. If it be said that the states can be trusted not to resort to any such extreme measures, because of the resulting interference with the efficiency of the national government, we may turn to the opinion of Mr. Chief Justice Marshall in *McCulloch* v. *Maryland,* supra [4 Wheat. 316, 4 L. Ed. 579, 607], page 431, for a complete answer: But is this a case of confidence? Would the people of any one state trust those of another with a power to control the most insignificant operations of their state government? We know they would not. Why, then, should we suppose that the people of any one state should be willing to trust those of another with the power to control the operations of a government to which they have confided their most important and most valuable interests? In the legislature of the Union alone are all represented. The legislature of the Union alone, therefore, can be trusted by the people with the power of controlling measures which concern all, in the confidence that it will not be abused."

After reviewing numerous decisions of that court wherein various taxes were held inapplicable to various instrumentalities of the state, and further observing that so far as the Federal Constitution was concerned, the prohibition against taxing such instrumentalities was not express but necessarily implied, the court said: "These decisions, while not controlling the question before us, indicate that the thought has been that the exemption of state agencies and instrumentalities from national taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the state in the carrying on of an ordinary private business."

As we read this decision, the court did not determine that the operation of the dispensary system was without the police power of the state, but did decide that the state dispensaries were not such a strictly governmental function as to be recognized as an instrumentality of the state, exempt from federal taxation; the opinion being based in part upon the necessity of preserving the federal government.

374

The other case upon which counsel rely is that of *Ohio* v. *Helvering,* 292 U. S. 360, 54 Sup. Ct. 725, 78 L. Ed. 1464. There the state of Ohio had provided a system of control for the manufacture, sale and importation of, and traffic in, beer and intoxicating liquors within the state, and creating a state monopoly for the distribution and sale of spirituous liquors under a department of liquor control. It was sought to enjoin the federal government from levying and collecting excise taxes on the agencies and operations of the state in the conduct of its department of liquor control. The court there said that the case before it was in no substantial respect distinguishable from that of *South Carolina* v. *United States,* supra, and after stating the contention that since the enactment of the Eighteenth Amendment and its repeal, the traffic in intoxicating liquors ceased to be a private business, said: "If a state chooses to go into the business of buying and selling commodities, its right to do so may be conceded so far as the Federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must find its support in some authority apart from the police power. When a state enters the market place seeking customers, it divests itself of its *quasi* sovereignty *pro tanto,* and takes on the character of a trader, so far, at least, as the taxing power of the federal government is concerned." The quoted portion of the opinion was in reply to the contention as stated.

When these two decisions are read together, the statement was to the effect that the fact of the passage of the Eighteenth Amendment and its subsequent repeal did not change the status of intoxicating liquors when dispensed or handled by a state liquor system; did not render the liquor stores or dispensaries an instrumentality of the government which was exempt from federal taxation within the implied prohibition against such taxation by the federal Constitution. If the language is to be given a broader meaning, such meaning was unnecessary to the decision.

If the regulation of the manufacture and sale of intoxicating liquors is within the police power of the state, and if the power of the state under its police power extends to the prohibition of the manufacture and sale of intoxicating liquors, then manifestly a system such as is set up in Chapter 105 is within the police power of the state. (Compare *State ex rel. Lyman* v. *Stewart*, 58 Mont. 1, 190 Pac. 129.)

Lastly, it is contended that the Act violates section 8 of Article I of the Federal Constitution, namely, that Congress shall have the power to regulate commerce with foreign states and among the several states. A complete answer to this contention is section 2 of the Twenty-First Amendment, which provides as follows: ''Transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.'' Many citations are found in the brief of counsel for the defendant, holding that a law such as Chapter 105, so far as it might interfere with interstate commerce, would be beyond the power of the state, were it not for this constitutional amendment. The proposition urged upon us that the law of the state which conflicts with the Constitution of the United States is a nullity, is sound enough, but the defendant is seeking to have nullified a provision of the very Constitution to which he appeals. Therefore, the contention is without merit.

The judgment is reversed and the cause remanded to the district court of Granite county, with direction to vacate, annul and set aside the judgment of dismissal, and to overrule the demurrer theretofore sustained.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

Rehearing denied February 13, 1936.