M. C. HARRISON and AVANELLE D. HARRISON,
doing business as THE HARRISON COMPANY,
*Plaintiffs and Appellants,*

vs.

WYOMING LIQUOR COMMISSION,
*Defendant and Respondent.*

(No. 2347; February 11th, 1947; 177 Pac. 2d 397)

14

For the Plaintiffs and Appellants, the cause was submitted upon the brief and also oral argument of A. Joseph Williams and Carleton A. Lathrop, both of Cheyenne, Wyoming.

For the Defendant and Respondent, the cause was submitted upon the brief of Louis J. O'Marr, Attorney General, Hal E. Morris, Deputy Attorney General, and Frank M. Gallivan, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument of Mr. O'Marr and Mr. Gallivan.

16

18

## OPINION

Blume, Justice.

The plaintiffs in this case, appellants herein, brought this suit against the Wyoming Liquor Commission, hereinafter designated as such or as Liquor Commission, or even as Commission. It is alleged that early in 1944 the Liquor Commission contracted to purchase of the plaintiffs 4800 cases of brandy. When 1800 cases had been delivered the Commission cancelled its contract by advising plaintiffs not to ship the remaining 3000 cases. Plaintiffs allege that they have been damaged by reason of this breach of contract in the sum of $18,000.00, for which they seek judgment herein. The Liquor Commission appeared by the attorney general of this state and filed a demurrer to the petition. The demurrer was sustained by the trial court and the plaintiffs refusing to plead further judgment was entered herein dismissing the plaintiffs' petition. From that judgment plaintiffs have brought this case to this court by direct appeal.

The legislature of this state, in 1935 undertook to enact comprehensive laws for the regulation and control of intoxicating liquors. Chapter 87 of the Session Laws of that year, approved February 19, 1935, is the most comprehensive of these laws. It provided among other things that an excise tax of ten cents a pint on

spirituous liquors sold, should be collected, and that the Wyoming Liquor Commission should collect this tax. The Liquor Commission is frequently mentioned in this Chapter, and various duties were imposed upon it thereunder, but it was not itself created by the act, but by Chapter 117 of the Session Laws of 1935, the bill for which was introduced the same day as that for Chapter 87 and was approved February 20, 1935. That Chapter imposed various duties on the Commission in connection with enforcement of the intoxicating liquor laws of the state. It was created the wholesale distributor and seller of intoxicating liquor, excepting malt liquor, within the state and was granted the sole right to sell such intoxicating liquors at wholesale within the state. No licensee or permittee to sell liquors at retail was permitted to purchase such liquor except from the Wyoming Liquor Commission. Section 2 (a) of this Chapter provides, among other things: "The said commission may purchase such intoxicating liquors in such quantities and from such sources as it may deem desirable and sell the same to retail distributors or permittees within this State, keeping a correct and accurate record of all such transactions and charging such profit on such resales as will provide a fund sufficient to defray the expenses of the said commission in all of its activities under this Act and such additional profit as may seem right and proper to the said commission." Section 2 (d) of this act provided that all moneys collected by the Commission under the provisions of the Act should be paid into the treasury of the state. However, no provision was made for the payment of the liquor which the Commission might purchase. It is probable, therefore, that the Commission adopted the same practice which is in force and effect at the present time; namely, it had a banking account from which it paid for the purchases which it made, paying into the treasury of the state only from time to time

the earnings or net profits it had made. In 1939, by Chapter 109, Session Laws of that year, (Sec. 53-102 (d) Wyo. Comp. Statutes of 1945), the legislature apparently approved the practice of the Liquor Commission and provided that all *earnings* collected under the provisions of the Act should be paid into the treasury of the state. Some other facts will be mentioned hereafter.

It is the contention of the attorney general herein that the Wyoming Liquor Commission is not such an entity as may be sued; that it is an alter ego of the state; that it is an agency of the state, performing governmental functions, and that hence it is exempt from suit the same as the state itself. The first of these contentions, namely that the Liquor Commission is not an entity that can be sued, appears to be but another way of stating that, since it is an alter ego of the state, it cannot be sued. Hence we shall not attempt to treat these forms of contention separately.

I.

In answer to the claim that the Wyoming Liquor Commission is exempt from suit, counsel for the plaintiffs contend that while no specific consent is given by the state to make it subject to suit, the consent may be implied. They claim that this is true under Chapter 35, Special Session Laws of 1933, which provides "that any action permitted by law, which shall be brought against Wyoming Farm Loan Board, * * * is hereby declared to be an action against The State of Wyoming", and may not be brought except in the courts of Wyoming. A number of boards and commissions are enumerated in the statute as well as in the title of the act, but the Wyoming Liquor Commission is not included. It is not necessary to determine the meaning of the statute and we do not do so. It is generally held that statutes authorizing suit against the state are to be

fettered freedom for government from crippling inter-strictly construed, since they are in derogation of the state's sovereignty. 59 C. J. 303. And "the history of sovereign immunity and the practical necessity of un-ferences require a restriction of suability to the terms of the consent, as to persons, courts and procedure." Great Northern Life Ins. Co. vs. Read, 322 U. S. 47, 64 S. Ct. 873, 88 L. Ed. 1121. We do not, accordingly, have the right to read the foregoing legislative act as though it included a board or commission which has not been enumerated therein.

Counsel for appellant also appeal to Chapter 77, Session Laws of Wyoming of 1935, which provides as follows: "That any Officer, Board or Commission of the State of Wyoming, having under his or its charge or control, the enforcement of any contract, * * * is hereby granted the power and authority to bring an action upon any such contract in the name of the State of Wyoming for the recovery of damages which may accrue to the State of Wyoming by reason of any breach or breaches of any such contract * * *." The statute further provides that any such officer, board or commission of the state may employ counsel and other assistance upon a contingent basis of compensation for the services of such counsel or other assistance so em-ployed. The statute evidently was passed for a specific purpose which we need not attempt to discover at this time. From the fact that officers, boards and commis-sions of the state may sue, as mentioned in this statute, counsel for plaintiffs deduce the rule, as though a re-ciprocal or correlative one, that they are also subject to suit by others. But these officers, boards and com-missions have not, contrary to counsels' seeming in-terpretation, been given the right to sue in their own name. They must sue in the name of the state. They are but instrumentalities, or agencies, as there always must be, through which the state initiates its activities.

One of the postulates is that the state is an interested party to the suit, and since the agencies above mentioned must sue in the name of the state it would seem logical that the only reciprocal rule, if any, which counsel might be able to deduce, is that when others sue on the contracts contemplated by the foregoing statute, they must sue the state. That, as counsel admit, cannot be done, Sovereignty is a law unto itself. The state may sue; it has an inherent power to seek to enforce its rights and its interests in the courts (59 C. J. 299), but it does not thereby surrender its immunity as a sovereign from suit by others. "The right of the state to sue in its own courts has always stood side by side with its right not to be sued." Dougherty vs. Vidal, 37 N. Mex. 256, 21 Pac. 2d 90, 93; 59 C. J. 187, 49 Am. Jur. 275.

II.

Counsel for plaintiffs lay great stress on the fact that by the legislative enactment of 1939, heretofore mentioned, the Liquor Commission is directed to pay to the state only the *earnings* or net income. They infer that by this provision the legislature contemplated that the Liquor Commission should be compelled to pay the current expenses, including the damages claimed, out of funds which it has in the banks, and that accordingly the suit herein should be maintainable. This contention is not unlike the contention that the legislature authorized a suit against the Liquor Commission. A somewhat similar contention was made in the case of Carolina Glass Co. vs. Murray, et al, 197 Fed. (D. C.) 392. It appears in that case that the dispensary boards of South Carolina were by law compelled to make quarterly reports of the profits made by them and pay out these profits so ascertained for various public purposes. The defendants in the case had in their hands some of the money of the dispensary boards, and it was

contended that they held this money as trustees and should, in justice, pay it to the plaintiff for goods which the plaintiff had sold to the dispensary boards. The facts and the conclusion of the court are more clearly stated in the following language:

"It is claimed that, inasmuch as the statute only undertakes to deal directly with the distribution of the profits of the business, the inference is that the balance was devoted by the state to the payment of the expenses of that business and incidentally as part of those expenses to the payment of the persons from whom the articles necessary for the business were purchased. It is contended that this constitutes such balance a sort of trust fund to be held by the county dispensery board for those specific parties, thus constituting the persons who might be the holders of that indebtedness, which must be deducted before the profits are ascertained, beneficiaries directly interested in this fund as a trust fund. This result would be a very strained inference under the circumstances. The direction that the profits must be ascertained and distributed may be a direction by the state to its agents to pay the expenses of the business before ascertaining and distributing the profits, but it is no more a segregation to the creditors individually of any part of the funds to pay the expenses than is the act of any prudent business man who pays the expenses of his business before he spends his profits. The state could at any time interfere and direct that these expenses should not be paid until vouched or audited as the state saw fit, or, in fact, it might expressly prohibit their payment until directed by an act of the Legislature, or, if it chose to go to that length, might wholly forbid the payment. The method adopted by the state for the payment of the expenses of the business authorized by it in no sense can be fairly construed as constituting the proceeds of the state's own property which could be used by it for the payment of those or any other expenses, a trust fund to which the parties to whom the expenses should be paid are entitled to look to as a specific fund assigned to them of which they are the beneficiaries."

The court further held, following decisions of the supreme court of South Carolina, that the funds were

funds of the state, and that the suit filed could not be maintained. We do not disagree with that case.

III.

Counsel for plaintiffs contend that because of its "precise legal nature" the Wyoming Liquor Commission is a quasi corporation, and hence subject to be sued upon its contracts. A quasi corporation is said to rank low down in the scale of corporate existence. See Words and Phrases under Quasi Corporations. It is, in other words, similar to a corporation, though it may not have all the powers thereof. Counsel point out that some state boards and commissions have been considered as quasi corporations, 18 C. J. S. 399. To sustain their contentions they rely upon the following cases: Clarissey vs. Metropolitan Fire Department, 1 Sweeney (N. Y.) 224; Stern vs. State Board of Dental Examiners, 50 Wash. 100, 96 Pac. 693; Gross vs. Ky. Board of Managers, 105 Ky. 840, 49 S. W. 458, 43 L. R. A. 703; Meyer vs. State Land Settlement Board, 99 Cal. App. 337, 278 Pac. 452; Standard Oil Co. vs. United States, 25 Fed. 2d 480; Hancock vs. Louisville & N. R. Co., 145 U. S. 409, 12 S. Ct. 969, 36 L. Ed. 755. In the Sweeney case from New York, a Fire Department created by the legislature was held to be subject to suit for negligence. It is doubtful that the holding is sound law today. See 43 C. J. 968; White vs. City of Casper, et al, 35 Wyo. 371, 249 Pac. 562, and cases cited. In the Washington case, supra, the property of a dental board was sought to be reached. The state had no interest whatever in the money of the board, and the case is therefore distinguishable from the case at bar. In the Kentucky case, supra, the board was sued for breach of contract in connection with a restaurant which it was running; that enterprise was held to be a private one and not a governmental business. The case was decided by a divided court, and other courts have criti-

cized the conclusion reached by that court. See Dougherty vs. Vidal, supra. In Standard Oil Co. vs. United States, supra, the court held that a docks commission was liable for tort on the theory that it was engaged in a non-governmental enterprise. The supreme court of Alabama in State Docks Commission vs. Barnes, 225 Ala. 403, 143 So. 581, disagreed with the holding in that case. Meyer vs. State Land Settlement Board, supra, was decided on the theory that the board was not acting in a governmental capacity, and the case is therefore distinguishable from the case at bar. The Hancock case above mentioned is entirely different from this case, and it is not necessary for us to analyze the facts therein. We might add that other cases in line with the cases cited by counsel may be found cited in State Ex Rel. Highway Commission vs. Bates, 317 Mo. 696, 296 S. W. 418.

In the Washington case, supra, the court said that "boards, commissions, and bodies created by legislative authority have an incidental capacity to sue and be sued, independently of any express power, and for that purpose are to be regarded as corporations sub modo." The statement is too broad, and is applicable only, as will hereafter be shown, in cases in which a board or commission is engaged in a non-governmental enterprise.

Counsel for plaintiffs have failed to point out the precise legal nature of the Liquor Commission which makes it a quasi corporation subject to suit. To determine that nature we must investigate the functions which the Commission performs and the purpose for which it exists. That nature cannot be determined in any other way and it is not something different from its functions and purposes as seems to be thought. The reasoning of counsel for plaintiffs seems to be that since the Commission may buy and sell liquor—in other

words, since it has the power to make contracts—therefore it is a quasi corporation and hence is subject to suit on the contracts which it makes. That is similar to the contention already mentioned, namely, that the right to sue implies the correlate of being subject to suit. Expressions are contained in cases cited by counsel which would seem to sustain their contention, but these expressions must be read in the light of the facts of those cases. It may be that in many cases when courts designate an entity by the term "quasi corporation", it is implied that it is subject to suit on its contracts. But that at least is not always true. Thus in Oklahoma Agricultural & Mechanical College vs. Willis, 6 Okl. 593, 52 Pac. 921, 40 L. R. A. 677, the court held that the college, designated as a "quasi corporation", could not, though authorized to make contracts, be sued thereon without express legislative authority. See also Pacific Fruit & Produce Company vs. Oregon Liquor Commission, 41 Fed. Supp. 175. It would seem to follow that to merely designate a commission or a board by the term "quasi corporation" does not necessarily make it subject to suit, for, after all, names are but symbols for the substance of things for which they stand. A private corporation or quasi corporation must, of course, perform its contracts or respond in damages, and that may also be true with some agencies which may be created by the legislature, as hereinafter explained. But the rules governing in a case in which the state is the real party in interest, and where the commission or board is the alter ego of the state cannot be ignored and must prevail under the proper facts.

Whenever a contract by or on behalf of the state is made it must necessarily act through some agency, and that is generally done through a board or commission. Hence, it is clear that if a board or commission which enters into a contract on behalf of the state is always

subject to suit, the rule of immunity of the state from suit would be substantially annulled. That immunity from suit, generally speaking, extends to boards, commissions and agencies through which the state must act. Coldwater vs. State Highway Commission, (Mont.), 162 Pac. 2d 772, 776. 59 C. J. 187, 49 Am. Jur. 275. The fact that a contract may be executed in the name of the board or commission is not important if it was in fact entered into by it on behalf of the state, pursuant to authority duly conferred. Consolidated Indemnity & Ins. Co. vs. Texas Co., 224 Ala. 349, 351, 140 So. 566. Hence, the criterion or test proposed by counsel for plaintiffs, namely, that the right of a board or commission to enter into a contract implies the right to sue it for the breach thereof, must be limited in scope, and must be harmonized with the rule under which a board or commission is immune from suit.

In 59 C. J. 308, 309, it is stated that a suit is against the state wherein a state officer or agency is, or will be, required to use state property or funds in order to afford the relief demanded, or which seeks to compel officers or agents to do acts which will impose contractual liability on the state. That rule was recently stated in Ford Motor Co. vs. Department of Treasury, etc., 323 U. S. 459, 65 S. Ct. 347, 89 L. Ed. 389. To the same effect see 49 Am. Jur. 306. The Wyoming Liquor Commission, under Chapter 109, Session Laws of 1939, was commanded to pay into the treasury of the state all the earnings collected under the act. If the plaintiffs should succeed in obtaining damages in the sum of $18,000.00 or any other sum from the Liquor Commission, the funds of the treasury of the state would be diminished to that extent. Hence, the interests of the state are directly and financially affected by the results of this suit.

Financial interest of the state, however, is not, according to a number of authorities, necessarily the sole criterion as to whether or not a board or commission created by the state may be sued. It has been held that if a state agency engages in matters partaking more of the nature of ordinary or private business, and when the agency accordingly is a non-governmental one, a suit may be brought against it. 59 C. J. 312, 313, Annot. in 35 L. R. A. (N. S.) 243 to 245, 44 L. R. A. (N. S.) 196, 197. Some of the cases cited to us by counsel for plaintiffs were, as already noted, decided on that theory. On the other hand it is generally held, and almost without dissent, that a suit against an agency of the state engaged in a governmental function does not lie without the state's consent. 59 C. J. 308, note (b) ; Arkansas State Highway Commission vs. Nelson Bros., 191 Ark. 629, 87 S. W. 2d 394; State Highway Commission vs. Utah Construction Co., 278 U. S. 194, 49 S. Ct. 104, 73 L. Ed. 262; Price vs. State Highway Commission, (Wyo.), 167 Pac. 2d 309. A number of cases, even more directly in point herein, will be cited below.

The ultimate test of liability or non-liability to suit in this case must then be found in the answer to the question whether the Wyoming Liquor Commission was or was not an agency engaged in a governmental function. The Liquor Commission was given the following powers, by Chapters 87 and 117, Session Laws of 1935, (Chap. 53 Wyo. Comp. Statutes of 1945), namely: (1) It may aid or assist in the enforcement of all intoxicating liquor laws. (2) It may call upon and use the personnel of enforcement agencies in the enforcement of such laws. (3) It may cause the inspection of all places where intoxicating liquors are sold, and the books and records thereof. (4) It may grant licenses to parties desiring to engage in the sale of malt liquors at wholesale. (5) It may revoke licenses grant-

ed to sell intoxicating liquors. (6) It is given a limited power in determining the number of retail licenses which may be issued in towns, cities or counties. (7) It may issue special licenses to pharmacists. (8) It may issue licenses to railroad companies to sell liquor in dining cars, club cars and observation cars. (9) It collects the excise taxes against intoxicating liquors levied by the statute, and makes rules and regulations for the collection thereof. Furthermore, since 1939 (Chap. 35 Session Laws) the Commission is required to make a biennial report of its activities, which must contain a detailed statement of all financial transactions of the Commission, including the names of the parties who supplied the Commission with intoxicating liquor, and the names of all dealers to whom intoxicating liquor has been furnished by the Commission, and in both instances the amounts involved must be reported. It must also report the number of arrests made durin gthe biennium by the liquor inspectors employed by the Commission, and the number of prosecutions instituted following such arrests, and the number of convictions following such prosecutions. Failure to comply with these provisions is deemed to be a malfeasance in office. Sec. 53-104 and subsequent sections, Wyo. Compiled Statutes of 1945. These powers and duties clearly stamp the Wyoming Liquor Commission as an agency of the state performing governmental functions under the police power. The Commission, however, is given the further power to buy and sell intoxicating liquor as a wholesaler, as already mentioned, and the question is as to whether that one additional power completely changes the character of the Commission, so that to that extent it must be held to be engaged in a private enterprise. So we shall turn to the contention of counsel for plaintiffs on that point. But before doing so we might incidentally mention the fact that the duty to purchase liquor at wholesale in-

cludes the right and the power to select and purchase only those least injurious to the health and well-being of our citizens—a method of protection which itself would be in the exercise of the police power.

IV.

Counsel for plaintiffs contend, to use their own words, that "The Wyoming Liquor Commission is subject to suit for the reason that it produces' revenue under express legislative command, and is, therefore, performing a non-governmental function." The main authority, aside from some dissenting opinions, is the expression used by the supreme court of the United States in the case of State of Ohio vs. Helvering, 292 U. S. 360, 54 S. Ct. 725, 78 L. Ed. 1311, in which the court held that the State of Ohio, engaging in the sale of liquor, is not immune from federal tax on liquor dealers, following in that respect the case of South Carolina vs. United States, 199 U. S. 437, 26 S. Ct. 110, 50 L. Ed. 261. The court among other things stated:

"If a state chooses to go into the business of buying and selling commodities, its right to do so may be conceded so far as the Federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must find its support in some authority apart from the police power. When a state enters the market place seeking customers it divests itself of its quasi sovereignty pro tanto, and takes on the character of a trader, so far, at least, as the taxing power of the federal government is concerned."

The reasoning for non-immunity laid down in that court was, however, recently disapproved in the case of State of New York vs. United States, (U. S.), 66 S. Ct. 310, 90 L. Ed. 265, wherein the court held that the State of New York, in selling bottled mineral water taken from springs owned by the State, was not im-

mune from the federal excise tax on soft drinks. Some of the members of the court stated that to hold the state not immune merely gives an accustomed and reasonable scope to the federal taxing power, and that the nature of the tax immunity requires that it be so construed as to allow to each government reasonable scope for its taxing power. The case of South Carolina vs. United States, cited in the Helvering case was discussed in the case of Murray, et al vs. Wilson Distilling Co., 213 U. S. 151, 29 S. Ct. 458, 53 L. E. 742, in which the court held that the assets of the South Carolina State Dispensary were the assets of the state, and that an action to reach these assets was virtually an action against the state. Speaking of South Carolina vs. United States, supra, the court said that that case was concerned merely with the power of a state by virtue of its legislation to destroy a pre-existing right of taxation possessed by the government of the United States, and that it was not in conflict with the holding that the property of the dispensaries was the property of the state. So, too, in State ex rel. Wilkinson vs. Murphy, 237 Ala. 332, 186 So. 487, 121 A. L. R. 283, the court, in speaking of the Helvering case stated that "the liquor traffic was originally a private enterprise, and the Court merely holds that for the purpose of Federal taxation it will so remain." See also State vs. Andre, 101 Mont. 366, 54 Pac. 2d 566; Frankenstein vs. Leonard, 134 Ohio St. 251, 16 N. E. 2d 424. We do not think that the Helvering case has any controlling force in the case at bar.

It is well settled, and it is conceded, that the state has the amplest powers to prohibit, regulate and control the traffic in and the sale and use of intoxicating liquors. See Sec. 10, Article 19 of our Constitution. Within the purview of that power the state has the right to buy and sell at wholesale all intoxicating

liquors within its borders, as this state has undertaken to do, and even go further and establish state or municipal places where intoxicating liquors are sold at retail, generally called dispensaries. 30 Am. Jur. 368, 370, 48 C. J. S. 166; Riggins vs. District Court of Salt Lake County, 89 Utah 183, 51 Pac. 2d 645; annotation in 121 A. L. R. 300, where more than twenty cases are cited from various jurisdictions. The regulation and control of intoxicating liquor is referrable to the police power. It is a governmental function and "when the state itself takes over the traffic, it is as much in the exercise of a governmental function, through the police power, as when it works its convicts on farms purchased and in factories constructed by the state" and is not then engaged in any private enterprise. State ex rel. Wilkinson vs. Murphy, 237 Ala. 332, 186 So. 487, 121 A. L. R. 283. Since the state must act through agents it follows that the Wyoming Liquor Commission is an agent of the state performing governmental functions. State vs. Farnum, 73 S. C. 165, 53 S. E. 83; State ex rel. vs. Dispensary Commission, 79 S. C. 316, 60 S. E. 928; Carolina Glass Co. vs. State, 87 S. C. 270, 69 S. E. 391; Pacific Fruit & Produce Co. vs| Oregon Liquor Control Commission, 41 Fed. Supp. 175; Merchants', etc., Co. vs. Gelder, et al, 349 Pa. 1, 36 Atl. 2d 444; Berger vs. Schenley Distillers Corporation, 277 Mich .159, 269 N. W. 128; State vs. Andre, supra; Fowler vs. Harris, 174 Md. 398, 200 Atl. 825. Thus it was said in the last cited case: "The Liquor Control Board is a governmental agency, having as its design the supervision and control of the dispensing of intoxicating liquors, a business over which states, through their agencies, have long exercised supervision and control. The liquor dispensary here created is in no sense a private business or enterprise or property, as contemplated by the Constitution. The control, through regulatory agencies and processes, of the traffic in or

dispensing of alcoholic beverages has always been a subject in which the public is deemed to have an interest, and a rightful purpose in regulating." The funds arising from the sale of liquors through the Commission are the funds of the state, and the debts due for goods sold to it are the debts of the state. Murray vs. Wilson Distilling Co., 213 U. S. 151, 29 S. Ct. 458, 53 L. Ed. 742; State ex rel. vs. Dispensary Commission, supra; Carolina Glass Co. vs. State, supra. The suit against the Commission is, accordingly, in effect a suit against the state, and for that reason is clothed with immunity from suit the same as the state itself. Carolina Glass Co. vs. Murray, 197 Fed. 392; Fowler vs. Rome Dispensary, 5 Ga. App. 36, 62 S. E. 660; Merchants', etc., Co. vs. Gelder, supra; Carolina Glass Co. vs. State, supra; State ex rel. vs. Dispensary Commission, supra; Murray vs. Wilson Distilling Co., supra. See also note 44 L. R. A. (N. S.) 198 . All of the foregoing rules and conclusions were stated in a carefully prepared opinion in the case of State ex rel. vs. Dispensary Commission, supra.

Counsel for plaintiffs argue that neither the contract to purchase the liquor involved herein nor the cancellation of that contract was pursuant to any police power—in other words is not included within any governmental function. That function, however, must include the right to procure the liquor to be distributed, as otherwise the Commission could not perform its duty as a wholesale distributor. The source from which it buys is not determined by our statute so that this is necessarily left to its discretion. The right as governmental agency to buy liquor to be distributed includes, we think, all of the various incidents in connection therewith without changing the essential nature of the duty performed, and without changing the character of the state agency engaged in a governmental function. If

the debt due for goods sold under a contract is, as stated above, the debt of the state, it would be incongruous to hold that damage for breach of the same contract is differently situated.

The main reason advanced by counsel for plaintiffs in arguing that the state is engaging in a private enterprise when it buys and sells liquor, is the provision of the statute, already quoted, providing that the sales are to be made at a profit. It has been held in several cases that profits made in connection with state or municipal dispensaries are purely incidental to the control of the liquor traffic. State ex rel. Wilkinson vs. Murphy, supra; State vs. Driscoll, 101 Mont. 348, 54 Pac. 2d 571, 578 ;City of Klamath Falls vs. Oregon Liquor Control Commission, 146 Ore. 83, 29 Pac. 2d 564, 569; Equitable Loan & Security Co. vs. Town of Edwardsville, 143 Ala. 182, 38 So. 1016. In the last cited case it was held that when a municipality, pursuant to power conferred upon it, carries on dispensaries for the sale of intoxicating liquors, it does so pursuant to a governmental function, and that the stock of liquors in the dispensaries is not subject to levy and sale under execution against the municipality, even though the dispensary is run for profit; the profits in such case are purely incidental to the enterprise carried on under the police power. The court said in part: "If in carrying on the dispensary there arose profits from the sale of the liquors, this would be a mere incident of the business engaged in, or a natural result from good business management. But it cannot be said to follow, that profits would withdraw from the property its true character and convert it into property held for purposes of income or sale disconnected from any corporate use or function." Counsel claim that the case is distinguishable from the case at bar in that in South Carolina the making of profit was not mandatory, but

that profits as well as losses were contemplated, under the statutes of that state, while our statute makes the making of profit mandatory. We do not think that there is any substantial distinction between that case and the one at bar. The provision of our statute already quoted and relied upon by counsel, providing for the making of profit, is not mandatory in form, nor is it inconceivable that the Liquor Commission may sustain losses on many of its transactions.

It was held by the Supreme Court of the United States in Phillips vs. City of Mobile, 208 U. S. 472, 28 S. Ct. 370, 52 L. Ed. 581, that the fact that a city raises revenue under an ordinance providing for the licensing of places selling intoxicating liquor does not tend to show that the ordinance was not adopted in the exercise of the police power, and that the higher the license the better the regulation. Bearing this case in mind, even if our statute contemplates that the making of profits is mandatory, that would seem to be of little importance herein. The right to prohibit, regulate and control the traffic in and use of intoxicating liquor includes the right to restrict, limit and curb the consumption thereof. To raise the price by the method of profit would have a tendency to do so, and would, accordingly, be pursuant to the police power of the state. To show how true that is, we need but to mention the fact that the Liquor Commission is now required to collect an excise tax of 10c per pint for spirituous liquors; the statute could provide that no profit should be made, but it could raise the excise tax to net a sum equivalent to the profit which can or may now be made. The effect or tendency of both profit and excise tax is, as already indicated, to curb, limit and restrict the consumption of intoxicating liquor, and the right to bring that about has never been denied by any court to be other than the exercise of the police power of the state. Neither of

the methods here indicated seem to be unreasonable to accomplish that end, and neither method would, we think, transform an essentially governmental function into a private enterprise.

The judgment of the trial court will accordingly be affirmed.

RINER, C. J., and KIMBALL, J., concur.