Thomas L. EPTING, II, and Amy Lynn Epting, by their guardian, Plaintiffs and Appellants,

v.

STATE of Utah, Defendant and Respondent.

No. 14185.

Supreme Court of Utah.

Feb. 2, 1976.

opened on its motion and additional evidence taken.

Jackson B. Howard, of Howard, Lewis & Petersen, Provo, for plaintiffs and appellants.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiffs, minor children of Cynthia Epting Mitchell, sue the State alleging that it was negligent in allowing Michael Hart, a prisoner in the state prison, to escape and become involved in killing their mother. The trial court granted defendant's motion to dismiss. Plaintiffs appeal, seeking to have the case remanded for trial.

For the purpose of considering defendant's motion to dismiss we accept the plaintiffs' statement of facts.[1]

In October 1974, prisoner Michael Hart had been granted the privilege of being on a "work release" program. Each work day morning he was released from the prison and driven to his work at Uvalco, Inc., in Orem, and was then picked up after work and brought back to the prison. On October 10, Hart escaped and later in the evening (detail not material here) became involved in the killing of Cynthia Epting Mitchell, for which crime he was also later convicted.

The plaintiffs contend that the State was negligent in failing to use due care in keeping the prisoner Hart incarcerated or under surveillance and that this failure proximately caused the death of their mother.

A threshold issue is whether the state's immunity from such a cause of action is waived by the Utah Government Immunity Act.[2] The part of the act which both parties agree is crucial to the issue just stated is Section 63–30–10, U.C.A.1953:

Waiver of immunity—Injury caused by negligent act or omission of employee —Exceptions.—*Immunity* from suit of all governmental entities *is waived* for injury proximately caused by negligent act or omission of an employee committed within the scope of his employment *except* if the injury:

(1) *arises out of the exercise* or performance or the failure to exercise or perform *a discretionary function,* whether or not the discretion is abused, or

\* \* \* \* \* \*

(10) *arises out of the incarceration* of any person *in any state prison,* county or city jail or other place of legal confinement, or

\* \* \* \* \* \*

The trial court's ruling included a recital that "the provable facts under plaintiffs' complaint conclusively show" that plaintiffs' claim arises out of the exercise of a "discretionary function"; and also that it arises out of the "incarceration of a person in the state prison," within the meaning of the underscored phrases just quoted. Plaintiffs argue that the trial court erred in both grounds of his ruling just stated.

In approaching the analysis of the opposing contentions it is well to have in mind that the legislature has recognized the necessity of immunity as essential to the protection of the state in rendering the many and ever increasing number of governmental services. In a prefatory section of the act, 63–30–3, U.C.A.1953, it has provided that:

*Except* as may be *otherwise provided* in this act, *all governmental entities shall be immune from suit* for any injury which may result from the activities of said entities wherein said entity is engaged in the exercise and discharge of a governmental function.

1. *Malmstrom v. Olsen,* 16 Utah 2d 316, 400 P.2d 209 (1965); *Ewan v. Butters,* 16 Utah 2d 272, 399 P.2d 210 (1965).

2. Title 63, Chapter 30, U.C.A.1953.

The decisions of this court,[3] and other states,[4] have indicated recognition of the principle that where there is thus a general preservation of governmental immunity, any exception must be found to be clearly stated within the provisions of the act.

In regard to the problem: whether the placing of a prisoner in a "work release" program comes within subsection (1) above quoted as "the exercise . . . [of] . . . a discretionary function, . . . ," we make the following observations: The prison authorities are faced with the dilemma which has always existed in penal institutions: as to what extent they are furnishing an education for further crime, or for the rehabilitation of prisoners into useful citizenship. We think there is not much doubt that the use of work release programs is a worthwhile effort toward the latter objective. But that is within the discretion of the prison authorities to decide. In addition to the exercise of this judgment as to the value and practicability of such a program generally, there are problems about its advisability as to each individual prisoner. In order to weigh the positive values of possible benefit for him in such a program against the negative factors such as the likelihood of his escaping and engaging in more antisocial conduct, it is essential to consider the various aspects of his personality: his intelligence, aptitudes and qualities of character such as honesty, integrity and industry; and whether he has demonstrated a sincere desire to rehabilitate himself so that there is a reasonable probability that he will succeed. Accordingly, we agree with the view of the trial court that the handling of the prisoner Michael Hart was something which "arises out of the exercise of a discretionary function"[5] for

which subsection (1) of Section 63–30–10 quoted above has retained sovereign immunity.

The foregoing adequately supports the ruling of the trial court. But the ruling was also based on subsection (10) of Section 63–30–10 quoted above, which leaves the protection of sovereign immunity for injuries which arise out of incarceration in the state prison. We therefore make this further comment: As to the status of Michael Hart vis-a-vis the state prison, there seem to be just two alternatives, either: (a) He had totally escaped the control of the prison and was thus acting on his own so the prison was not responsible for him; or (b) he was still under the control of the prison authorities so that his conduct would "arise out of the incarceration of any person in [the] state prison . . ." in which latter instance the prison is immune from suit under the statute.

Because of our agreement with the trial court, as above explained, on the fundamental proposition upon which any further proceeding against the state by the plaintiffs must depend, we do no more than mention other critical problems which would be confronted in order for the plaintiffs to recover, viz: whether there was any negligence on the part of the prison officials; whether the killing of Cynthia Epting Mitchell was something which could reasonably be foreseen and therefore could be found to be a proximate result of such negligence; and the additional ground cited by the trial court, that the plaintiffs had failed to file an undertaking as required by Section 63–30–19, U.C.A.1953. (All emphasis herein ours.)

Affirmed. No costs awarded.

3. See *Holt v. Road Commission*, 30 Utah 2d 4, 511 P.2d 1286; *Sheffield v. Turner*, 21 Utah 2d 314, 445 P.2d 367.

4. In *Lively v. City of Blackfoot*, 91 Idaho 80, 416 P.2d 27; *Schrader v. Veatch*, 216 Or. 105, 337 P.2d 814 (1959); *Harrison v. Wyoming Liquor Commission*, 63 Wyo. 13, 177 P.2d 397 (1947); and *Los Angeles County v. Riley*, 20 Cal.2d 652, 128 P.2d 537; *Williams v. Board of County Commissioners of Rice County*, 192 Kan. 548, 389 P.2d 795.

5. See *Evangelical United Breth. Church of Adna v. State*, 67 Wash.2d 246, 407 P.2d 440; and *Danner v. United States*, D.C., 114 F. Supp. 477.

HENRIOD, C. J., and ELLETT, J., concur.

MAUGHAN, Justice (dissenting):

For the following reasons I dissent.

The issue central to this lawsuit is: "Was the escape of the prisoner the result of a tort on the part of the State?" The trial court dismissed the action without finding out, and the opinion does not mention the issue.

Whether we have work release programs, or not, is a basic policy decision, and discretionary with the State, insofar as they are constitutionally permissible. No question is raised against that proposition. But, it does not follow that the escape of the prisoner from the work release program is also discretionary with the State. When we commend the work release program we commend a discretionary act taken at the planning level, the basic policy-making level. Here we are not concerned with decisions made on that level, we are concerned with circumstances occurring and decisions made on the operational level. This court has clearly made that distinction in *Carroll v. State Road Commission.*[1]

Plaintiffs' allegations pertinent to the central issue are:

\*    \*    \*    \*    \*    \*

4. On or about the 10th day of October, 1974, Michael Hart was an inmate in the Utah State Penitentiary under the control and custody of the warden of that penitentiary and his subordinate officers.

5. Michael Hart was incarcerated as a result of a crime involving moral turpitude, to-wit: arson, and by reason of the fact that he had a long history of violent criminal conduct, was known to the defendant, or should have been known to the defendant as being violent, malicious, incorrigible and a sexual deviate.

6. The criminal and dangerous propensities of the prisoner, Hart, were known to the defendant or, with the exercise of reasonable care, should have been known to the defendant and not withstanding this fact, the defendant, acting by and through its agents, officers and employees, allowed the prisoner to be released from custody without an order of the Court, without having served his sentence, and without having been rehabilitated; and in doing so, the defendant failed to exercise ordinary prudent control over the prisoner, thereby exposing the general public to the danger and risk attendant to such exposure.

7. The care of prisoner Hart by the defendant was so flagrantly negligent that those charged with his custody and supervision allowed him to purchase alcoholic beverages, to drink them while in custody and to regulate the terms and conditions of his own incarceration to suit his (Hart's) convenience.

8. On or about the 10th day of October, 1974, prisoner Hart failed to return to the prison and this fact was known to the defendant, its officers, agents, and employees as of 9:30 p. m. on that date.

9. It was known to the defendant, its officers, agents and employees that the prisoner was acquainted with one, Cynthia Hanegan Mitchell, the mother of the plaintiffs, and the defendant knew or should have known that the prisoner was a former resident of Orem and that in light of his acquaintance with Cynthia Hanegan Mitchell and her husband, he was likely to seek out and find Cynthia Hanegan Mitchell and her husband, and notwithstanding the knowledge known to the defendant, its officers, agents and employees, the defendant failed and neglected to inform Cynthia Hanegan Mitchell or her husband or relatives, or the Orem Police Department, of such escape and the defendant failed to exercise prudent, diligent and prompt efforts to apprehend the said prisoner after he had escaped and knowing the facts of the prisoner's propensities and his likely objectives and destinations, the defendant, nevertheless, did not act in a reason-

1. 27 Utah 2d 384, 389, 496 P.2d 888 (1972).

able manner to apprehend the said prisoner.

10. The prisoner Hart, on or about the 10th day of October, 1974, did batter, rape and murder Cynthia Hanegan Mitchell, the mother of the plaintiffs.

Now, unless we want to hold that escapes (under any circumstances), are an intrinsic part of the work release program, and as such discretionary, then we must reach further, into the operational level, to determine if decisions and circumstances culminating in the escape were tortious. Such can only be a matter of evidence, and not summary dismissal.

Another matter of grave concern is whether the actions of the State are legal on any level. Article XVI, Section 3, Constitution of Utah, states:

The Legislature shall prohibit:

\* \* \* \* \* \*

(3) The labor of convicts outside prison grounds, except in public works under the direct control of the State.

\* \* \* \* \* \*

Are the actions of the State constitutionally impermissible? An evidential determination is necessary.

With reference to the "arises out of the incarceration of any person . . ." exception in our Governmental Immunity Act,[2] I submit that a careful reading of the statute, and a consideration of the policy reasons behind enacting such a statute conclusively show that the statute's purpose is to prevent incarcerated persons from disrupting the orderly administration of governmental institutions where legal confinement, for crime or offense, is proper; by rendering nugatory frivolous lawsuits ·y incarcerated persons, against supervisory personnel.[3] It has nothing whatever to do with a third party not even remotely connected with the incarceration.

This view, I believe, is strengthened by our Constitution.[4] The phrase "arising out of the incarceration" was enacted, and

must be read in the light of the constitutional provision which prohibits the labor of convicts outside the prison grounds, except in public works under the direct control of the State. Thus, it would seem the phrase could only mean injuries arising while the incarcerated person was in the prison, or under the direct control of the State, while laboring on a public work. By a logical extension it would embrace those incarcerated elsewhere.

The interpretation placed on the incarceration exception is, in my view, far too broad. What other remote and tenuous connections to incarceration would be countenanced under such interpretation? Such an interpretation does not comport with the fact, viz., that, if anything, the claim arose out of the prisoner's lack of incarceration. Thus, we return to the central point: How did that lack of incarceration occur? I would reverse and remand for trial.

TUCKETT, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

---

2. 63-30-10(10), U.C.A.1953. ·

3. *Sheffield v. Turner*, 21 Utah 2d 314, 445 P.2d 367 (1968).

4. Article XVI, Section 3: The Legislature shall prohibit: The labor of convicts outside prison grounds, except in public works under the direct control of the State.